670 F.Supp. 845 (1987)
WOMEN'S HEALTH CENTER OF WEST COUNTY, INC., et al., Plaintiffs,
v.
William L. WEBSTER, et al., Defendants.
No. 87-0050C(6).
United States District Court, E.D. Missouri, E.D.
September 24, 1987.
*846 Irving L. "Buddy" Cooper, Karen A. Greenberg, Edwards, Cooper & Singer, St. Louis, Mo., for plaintiffs.
Jerry L. Short, Asst. Atty. Gen., Jefferson City, Mo., for defendants Webster & State of Mo.
Lawrence E. Mooney, Pros. Atty.'s Office, St. Louis, Mo., for defendant Westfall.

*847 MEMORANDUM
GUNN, District Judge.
This matter is before the Court on defendants' motion for partial summary judgment and plaintiffs' motion for class certification.
Plaintiffs have brought a class action for declaratory and injunctive relief in which they challenge §§ 1.205, 188.010, 188.080, 188.105, 188.110, 197.200(1), 197.205, 197.215, 197.220, 197.221 and 197.235 of the 1986 Missouri act relating to the regulation of abortions (the Act).[1] Generally speaking, plaintiffs contend these sections impermissibly burden a woman's right to an abortion by a doctor of her choice in violation of the first, fourth, fifth, ninth and fourteenth amendments of the United States Constitution.
Plaintiffs Women's Health Center of West County, Inc., Women's Health Center of Cape Girardeau, Inc. and Women's Health Center of St. Peters, Inc. (Women's Health Centers) are Missouri corporations which provide gynecological medical services, including first and second trimester abortions. Plaintiff Bolivar M. Escobedo, M.D., (Escobedo) is a physician licensed to practice medicine in the State of Missouri. Escobedo provides gynecological services, including abortions, and operates the Women's Health Centers. Although Escobedo has staff privileges at two Peruvian hospitals, he does not have staff privileges at a Missouri hospital which offers obstetrical or gynecological services. Plaintiff C.J.E. was, at the time of filing the present action, a twenty-two year old unmarried woman approximately in her sixth week of pregnancy who wished to obtain an abortion from Escobedo. Defendants are the State of Missouri, William L. Webster, the Attorney General of the State of Missouri, and George "Buzz" R. Westfall, the Prosecuting Attorney of St. Louis County, Missouri.
Plaintiffs, except C.J.E., wish to bring this action on behalf of themselves and on behalf of all medical care providers and their patients who perform or wish to obtain an abortion in St. Louis County, Cape Girardeau and St. Peters, Missouri. C.J.E. wishes to bring this action on behalf of herself and on behalf of all other similarly-situated women.

I. Defendants' Motion for Partial Summary Judgment
At the outset, the Court notes that summary judgment is an extreme remedy which is only available to a moving party who "has established his right to judgment with such clarity as to leave no room for controversy" and who has demonstrated that the non-moving party "is not entitled to recover under any discernible circumstances." Greco v. ABC Transnational Corp., 623 F.Supp. 104, 105 (E.D.Mo.1985), citing Steele v. Armour & Co., 583 F.2d 393 (8th Cir.1978). The burden of proof is on the moving party, and the Court should not grant summary judgment unless it is convinced that there is no evidence to sustain a recovery under any circumstances. Buller v. Buechler, 706 F.2d 844, 846 (8th Cir.1983). However, the party opposing the motion cannot rest upon the allegations of his pleadings, but "must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). If appropriate, summary judgment serves a "salutary purpose in avoiding a useless, expensive, and time consuming trial where there is no genuine, material fact issue to be tried." Lyons v. Board of Education of Charleston, etc., 523 F.2d 340, 347 (8th Cir.1975).
In their motion for partial summary judgment, defendants contend plaintiffs have failed to allege facts demonstrating a justiciable case or controversy concerning the constitutionality of §§ 1.205, 188.010, 188.105, 188.110, 197.200(1), 197.205, 197.215, 197.220, 197.221 and 197.235.[2] For the reasons set forth below, the Court agrees.

*848 A. Section 1.205

Section 1.205 provides in pertinent part:
1. The general assembly finds that:
(1) The life of each human being begins at conception; [and]
(2) Unborn children have protectable interests in life, health, and well-being. ...
The District Court for the Western District of Missouri recently declared § 1.205.1(1) and (2) unconstitutional and issued an order permanently enjoining both the State of Missouri and Attorney General William L. Webster from enforcing it. Reproductive Health Services v. Webster, 655 F.Supp. 1300 (W.D.Mo.1987). The court's order is currently on appeal to the Court of Appeals for the Eighth Circuit. As a result, defendants contend that the issue as to the constitutionality of § 1.205.1(1) and (2) is now moot and that plaintiffs' challenge of § 1.205.1(1) and (2) should be dismissed. Plaintiffs, however, contend that the issue should be stayed or abated until such time as the court of appeals issues its decision. As the Court finds no purpose would be served if the issue were stayed or abated, it dismisses plaintiffs' cause of action as to § 1.205.[3]
The reasons for the Court's decision are two-fold. First, plaintiffs in the present case are bound by the decision in Reproductive Health Services, supra. In Reproductive Health Services, the named plaintiffs brought suit not only on their own behalf, but also on behalf "of the entire class consisting of facilities, Missouri licensed physicians, or other health care professionals offering abortion counseling and services, and pregnant females." Id. at 1303. Consequently, both the named plaintiffs here and the classes they wish to represent were in fact parties to the suit. Second, the defendants are bound, as is this Court, by whatever decision the Court of Appeals for the Eighth Circuit reaches as to the constitutionality of § 1.205.1(1) and (2). There would thus be no reason for the Court to reconsider the constitutionality of § 1.205.1(1) and (2) once the issue is resolved on appeal.

B. Section 188.010
Section 188.010 provides as follows: It is the intention of the general assembly of the state of Missouri to grant the right to life to all humans, born and unborn, and to regulate abortion to the full extent permitted by the Constitution of the United States, decisions of the United States Supreme Court, and federal statutes.
Such a statement of intent, plaintiffs contend, both impinges upon a woman's right to receive counseling concerning the abortion decision and impermissibly burdens her right to obtain an abortion in violation of the Supreme Court's mandate in Roe v. Wade, 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973), and its progeny.
Although the Court finds § 188.010 may be relevant in construing Missouri statutes relating to the regulation of abortions, it finds that it is not subject to constitutional attack. First, it merely enunciates the intent of the legislature and does not enact any substantive provision. Second, it simply instructs those responsible for construing the Act to do so in a manner which is consistent with the Constitution itself. Accordingly, the Court dismisses plaintiffs' cause of action as to § 188.010.

C. Sections 188.105 and 188.110.1
Insofar as it is pertinent here, § 188.105 prohibits an employer from discriminating against any individual because of such individual's "refusal to participate in abortion" unless the refusal constitutes an "undue hardship on the conduct of that particular business or enterprise" or unless *849 "participation in abortion is a bona fide occupational qualification reasonably necessary to the normal operation of the business or enterprise." However, § 188.105 does not "require any employer to grant preferential treatment to any individual because of such individual's refusal to participate in abortion." Section 188.110.1 prohibits any public or private college, university or hospital from discriminating "against any person for refusal to participate in abortion."
Plaintiffs contend that §§ 188.105 and 188.110.1, when read in conjunction with § 188.080,[4] are underinclusive and violate the right of those physicians who perform abortions to equal protection under the law as guaranteed by the fourteenth amendment of the Constitution. Thus, plaintiffs argue, Escobedo has failed in his attempt to obtain surgical privileges at a hospital, as he is required to do under § 188.080 if he wishes to perform abortions, in large part because these sections prohibit discrimination only against those physicians who do not perform abortions. If these sections included physicians who perform abortions as a protected class, they argue, Escobedo and physicians similarly situated to him could obtain surgical procedures at a hospital. In response, defendants contend that plaintiffs have failed to demonstrate they have suffered any actual or threatened injury as a result of these sections and therefore do not have standing to challenge their constitutionality. The Court agrees.
In order to demonstrate that he has standing to challenge the action sought to be adjudicated in a lawsuit, a plaintiff must show that he has suffered a personal "injury" which is "fairly traceable" to the challenged action and which is "likely to be redressed by a favorable decision." Valley Forge Christian College v. Americans United for Separation of Church and State, Inc., 454 U.S. 464, 472, 102 S.Ct. 752, 758, 70 L.Ed.2d 700 (1982). However, as the Supreme Court observed in Allen v. Wright, 468 U.S. 737, 751, 104 S.Ct. 3315, 3324, 82 L.Ed.2d 556 (1984), exactly what a plaintiff must demonstrate to establish his standing to challenge allegedly unlawful conduct eludes precise definition:
The injury alleged must be, for example, "`distinct and palpable,'" Gladstone Realtors v. Village of Bellwood, 441 U.S. 91, 100 [99 S.Ct. 1601, 1608, 60 L.Ed.2d 66] ... (1979) (quoting Warth v. Seldin, [422 U.S. 490, 501, 95 S.Ct. 2197, 2206, 45 L.Ed.2d 343 (1975)], and not "abstract" or "conjectural" or "hypothetical," Los Angeles v. Lyons, 461 U.S. 95, 101-102 [103 S.Ct. 1660, 1664-65, 75 L.Ed.2d 675] ... (1983); O'Shea v. Littleton, 414 U.S. 488, 494 [94 S.Ct. 669, 675, 38 L.Ed.2d 674] ... (1974). The injury must be "fairly" traceable to the challenged action, and relief from the injury must be "likely" to follow from a favorable decision. See Simon v. Eastern Kentucky Welfare Rights Org., 426 U.S. [26, 38, 96 S.Ct. 1917, 1924, 48 L.Ed.2d 450 (1976)].
Id. Nevertheless, as the Supreme Court in Allen goes on to observe, the substantial body of case law on standing illustrates the relevant inquiry: that is, whether the injury is "too abstract ... to be considered judicially cognizable"; whether "the line of causation between the illegal conduct and injury [is] too attenuated"; and whether "the prospect of obtaining relief from the injury as a result of a favorable ruling [is] too speculative." Id. at 752,[5] 104 S.Ct. at 3325.
In reviewing the record in this case, the Court finds that Escobedo has failed to demonstrate, either through testimony or evidence adduced in hearings, depositions, affidavits or otherwise, that his injury, the inability to obtain surgical privileges at a hospital, is causally related to the enactment *850 of §§ 188.105 and 188.110.1. In the language of Allen, the "line of causation" between his injury and the sections in question is simply "too attenuated" to confer standing upon him. Allen, 468 U.S. at 752, 104 S.Ct. at 3325.
The Supreme Court's reasoning in Simon v. Eastern Kentucky Welfare Rights Org., 426 U.S. 26, 96 S.Ct. 1917, 48 L.Ed.2d 450 (1976) is particularly instructive in this regard. In Simon, plaintiffs, indigent persons in need of free medical care, sought to challenge an Internal Revenue Ruling which permitted hospitals to retain their charitable status while offering a reduced level of free care to indigents. The Court dismissed the suit as it found that the causal link between the alleged harm and the challenged ruling was too attenuated to sustain plaintiffs' standing.
First, it noted that the alleged injury to plaintiffs  the denial of free medical care  was highly indirect inasmuch as it resulted from the independent actions of various hospitals who were not before the court. Id. at 41, 96 S.Ct. at 1925. As it had earlier observed in Warth v. Seldin, 422 U.S. 490, 505, 95 S.Ct. 2197, 2208, 45 L.Ed.2d 343 (1975), "... the indirectness of the injury ... may make it substantially more difficult ... to establish that ... the asserted injury was the consequence of the defendants' action...." Next, it examined plaintiffs' allegation that the challenged ruling had "encouraged" hospitals to deny free medical care to indigents:
The implicit corollary of this allegation is that a grant of [plaintiffs'] requested relief, resulting in a requirement that all hospitals serve indigents as a condition to favorable tax treatment, would "discourage" hospitals from denying their services to [plaintiffs]. But it does not follow from the allegation and its corollary that the denial of access to hospital services in fact results from [defendants'] new [revenue ruling], or that a court-ordered return by [defendants] to their previous policy would result in those [plaintiffs] receiving the hospital services they desire.
Id. at 42, 96 S.Ct. at 1926. "It is," the Court concluded, "purely speculative" whether plaintiffs' injuries "fairly can be traced" to the revenue ruling "or instead result from decisions made by the hospitals without regard to the tax implications." Id. at 42-43, 96 S.Ct. at 1926.
In Simon the required nexus between the injury and the challenged action is evaluated in the context of whether the requested relief will redress plaintiffs' injuries. Although Escobedo is challenging §§ 188.105 and 188.010 on equal protection grounds and need not demonstrate that the requested relief will alleviate his injury,[6] this Court finds the reasoning in Simon persuasive. First, Escobedo's injury  the inability to obtain surgical privileges at a hospital  is highly indirect inasmuch as it results from the independent actions of various hospitals who are not before the Court. Next, it is purely speculative as to whether his injury can fairly be traced to the antidiscrimination provisions of §§ 188.105 and 188.010 and not to decisions made by the hospitals without regard to Escobedo's willingness to perform abortions. The claim of causation between his injury and the challenged provisions are simply too attenuated to sustain his standing.[7] According, the Court dismisses plaintiffs' cause of action as to §§ 188.105 and 188.010.

D. Sections 197.200(1), 197.205, 197.215, 197.220, 197.221 and 197.235
Section 197.200 et seq. amended the Missouri Ambulatory Surgical Center Licensing Law so as to cover abortion facilities. Both parties concede that regulations required to implement these amendments have not yet been promugated and that abortion facilities are not yet required to be licensed in Missouri. Accordingly, as § 197.200 et seq. are not ripe for review, *851 plaintiffs' cause of action as to § 197.200 et seq. is dismissed without prejudice.

II. Plaintiffs' Motion for Class Certification
Plaintiffs Women's Health Centers and Escobedo seek to certify a class consisting of all medical care providers and their patients who perform or wish to obtain an abortion in St. Louis County, Cape Girardeau and St. Peters, Missouri. Plaintiff C.J.E. seeks to certify a class consisting of all other similarly-situated pregnant women.
On June 2, 1987, the Court held a hearing to determine whether class certification was appropriate. Escobedo, a licensed physician specializing in obstetrical and gynecological care, testified that he is the principal owner and president of the Women's Health Centers. Although he has applied for surgical privileges at several hospitals which provide obstetrical and gynecological services, he has yet to receive a response from these hospitals and is consequently prohibited, as a result of the enactment of § 188.080, from performing abortions. However, he indicated that the Women's Health Centers may continue to provide abortions as they have physicians on staff who do have such surgical privileges. Finally, Escobedo testified that he knew of no other physician who wishes to perform abortions who either did not have or could not obtain surgical privileges at a hospital. Escobedo thus admits that he stands alone as one who performs abortions and who has not yet obtained surgical privileges at a hospital.
C.J.E. testified that, at the time of filing suit, she was a twenty-two year old pregnant woman who was employed by the Women's Health Center of West County, Inc. as a medical assistant and counselor. Upon learning that she was pregnant, she wished to obtain an abortion from Escobedo but was precluded from doing so by virtue of Escobedo's inability to obtain surgical privileges at a hospital. She further indicated that, having had three prior abortions at the hands of Escobedo, she would not seek an abortion from any other physician but him. However, subsequent to filing suit, she testified that her pregnancy was terminated by a spontaneous abortion or miscarriage. She did not present any evidence or testimony concerning how many other women wished to obtain an abortion from Escobedo or from any other physician who was unable to obtain surgical privileges at a hospital.
Rule 23(a) of the Federal Rules of Civil procedure establishes four prerequisites to the maintenance of a class action:
(i) numerosity  that is, the class must be "so numerous that joinder of all members is impracticable";
(ii) commonality  that is, there must be present "questions of law or fact common to the class";
(iii) typicality  that is, the claims or defenses of the class representative must be "typical of the claims or defenses of the class"; and
(iv) adequacy of representation  that is, the class representatives must be in a position to "fairly and adequately protect the interests of the class".
The person or persons seeking to represent the class bear the burden of demonstrating that all four prerequisites to the maintenance of the class action are satisfied. Smith v. Merchants & Farmers Bank of West Helena, 574 F.2d 982 (8th Cir.1978).
As the Court has already held that plaintiffs may only challenge the constitutionality of § 188.080, which requires physicians who perform abortions to obtain surgical privileges at a hospital which provides obstetrical and gynecological services, the sole remaining issue is whether plaintiffs have met their burden of demonstrating that the two classes they wish to have certified satisfy all of the prerequisites of Rule 23(a) with respect to their challenge of § 188.080. The Court finds they have not.
Plaintiffs have failed to meet their burden of demonstrating that either class they wish to have certified is "so numerous that joinder of all members is impracticable." The determination of whether a class is sufficiently large so as to render joinder of all its members impracticable must be *852 made by the Court "in light of the particular circumstances of the case." Arkansas Ed. Ass'n v. Board of Education of the Portland, Arkansas School District, 446 F.2d 763, 765 (8th Cir.1971). Although no arbitrary rules regarding the necessary size of a class have been established, Boyd v. Ozark Airlines, Inc., 568 F.2d 50, 54 (8th Cir.1977), a plaintiff must demonstrate that numerosity exists. Belles v. Schweiker, 720 F.2d 509, 515 (8th Cir.1983); see also Tate v. Weyerhaeuser Co., 723 F.2d 598 (8th Cir.1983), cert. denied, 469 U.S. 847, 105 S.Ct. 160, 83 L.Ed.2d 97 (1984) (a class of seven is too small to require certification); Tuft v. McDonnell Douglas Corp., 581 F.2d 1304 (8th Cir.1978) (separate classes of 13 and 11 are too small to require certification). However, a plaintiff need not specify an exact number of class members, but must only show "some evidence or reasonable estimate of the number of purported class members." Linquist v. Brown, 633 F.Supp. 846, 858 (W.D. Mo.1986) (quoting Zeidman v. J. Ray McDermott & Co., 651 F.2d 1030, 1038 (5th Cir.1981)), aff'd, 813 F.2d 884 (8th Cir. 1987).
In this case, only those physicians who wish to perform abortions and who cannot obtain surgical privileges at a hospital which provides obstetrical and gynecological care have standing to challenge § 188.080. At the class certification hearing, plaintiffs were unaware of a single physician other than Escobedo who wished to perform abortions and who could not obtain surgical privileges at a hospital. Moreover, plaintiffs adduced no testimony at the hearing to indicate how many women who are similarly situated to C.J.E. are in any way hampered in their ability to obtain an abortion as a result of the enactment of § 188.080. Plaintiffs, in other words, have failed to demonstrate that numerosity exists as to either of the two classes they wish to have certified. As the Court finds the proposed classes are unsufficiently numerous to satisfy the numerosity prerequisite, it declines to consider the other prerequisites to the maintenance of a class action.
Even if the Court were to find that plaintiffs had met their burden in satisfying the prerequisites to the maintenance of a class action, it would decline to certify the proposed classes. When declaratory and injunctive relief is sought on behalf of a class, and when the benefits of the relief sought will benefit all members of a proposed class, a court may exercise its discretion and decline to certify the class. See Ihrke v. Northern States Power Co., 459 F.2d 566, 572 (8th Cir.1972), vacated as moot, 409 U.S. 815, 93 S.Ct. 66, 34 L.Ed.2d 72 (1972); David v. Smith, 607 F.2d 535, 540 (2nd Cir.1978); Local 1928, American Federation of Government Employees v. Federal Labor Relations Authority, 630 F.Supp. 947, 948 n. 2 (D.D. C.1986). As the relief requested by plaintiffs would inure to the benefit of all of the members of the proposed classes, the Court finds that no useful purpose would be served by permitting the case to proceed as a class action.
Accordingly, the Court denies plaintiffs' motion for class certification.

ORDER
Pursuant to the memorandum filed herewith,
IT IS HEREBY ORDERED that defendants' motion for partial summary judgment be and it is granted. Accordingly, plaintiffs' causes of action as to Sections 1.205, 188.010, 188.105, 188.110, 197.200(1), 197.205, 197.215, 197.220, 197.221 and 197.255, R.S.Mo. (1986), are dismissed.
IT IS FURTHER ORDERED that plaintiffs' motion for class certification be and it is denied.
NOTES
[1] All references to the Act are to R.S.Mo. (1986).
[2] Defendants do not argue that they are entitled to summary judgment with respect to plaintiffs' constitutional challenge to § 188.080. Section 188.080 provides in pertinent part that "... [a] physician performing an abortion who does not have surgical privileges at a hospital which offers obstetrical or gynecological care shall be guilty of a class B felony, and, upon conviction shall be punished as provided by law." Accordingly, the Court does not consider plaintiffs' challenge to the statute here.
[3] Plaintiffs have yet to directly address the constitutionality of the remaining subsections of § 1.205. The Court finds that their challenge of these subsections has either been mooted by the order issued in Reproductive Health Services, supra, or fails to state a claim upon which relief may be granted.
[4] Sec. 188.080 requires physicians who perform abortions to obtain surgical privileges at a hospital which offers obstetrical or gynecological care. The full text of the section is set forth in footnote 2, supra.
[5] It should be pointed out that a plaintiff may be granted standing to challenge an underinclusive statute on equal protection grounds even if he cannot demonstrate that invalidation of the statute will relieve him from his injury. See Heckler v. Mathews, 465 U.S. 728, 104 S.Ct. 1387, 79 L.Ed.2d 646 (1984).
[6] See footnote 5, supra.
[7] It stands to reason that if the line of causation is too tenuous to sustain Escobedo's standing it is also too tenuous to sustain either the Women's Health Centers or C.J.E.'s standing.