# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 01-2277EM

_____

International Association of      *
Firefighters of St. Louis,      *
Franklin and Jefferson Counties,      *
Local 2665; Lloyd Thompson; and      *
Alma Mendez-Thompson,      *
     *   On Appeal from the United
          Appellants,      *   States District Court
     *   for the Eastern District
      v.      *   of Missouri.
     *
     *
City of Ferguson and Allen D. Gill,      *
     *
          Appellees.      *

_____

Submitted:  December 13, 2001
Filed: March 25, 2002

_____

Before LOKEN, RICHARD S. ARNOLD, and BYE, Circuit Judges.

_____

RICHARD S. ARNOLD, Circuit Judge.

The International Association of Firefighters of St. Louis, Franklin, and Jefferson Counties, Local 2665, Lloyd Thompson, a Ferguson resident and employee, and his wife, Alma Mendez-Thompson, challenged a provision of the Charter of the City of Ferguson which prohibited certain city employees from sponsoring,

electioneering for, or contributing money to any candidate for mayor or city council. The plaintiffs claimed that the provision abridged their freedom of speech in violation of the First Amendment. The District Court granted summary judgment for the plaintiffs as to the sponsoring prohibition contained in the challenged provision, but granted summary judgment in favor of the City of Ferguson on all other claims. The plaintiffs Lloyd Thompson and Alma Mendez-Thompson appeal the decision of the District Court. We affirm the judgment insofar as it upheld the challenged provision as applied to Lloyd Thompson. The District Court also dismissed Alma Mendez-Thompson's separate claim for lack of standing. As to that issue, we reverse and remand for further proceedings.

I.

The City of Ferguson is a charter city located in St. Louis County, Missouri. In 1998, the City approved the current city charter. This charter includes the following provision:

> Neither the city manager nor any person holding an administrative office or position under the city manager's supervision shall be a candidate for mayor or city council member or engage, directly or indirectly, in sponsoring, electioneering or contributing money or other things of value for any person who is a candidate for mayor or council. All such persons shall retain the right to vote as they choose and to express their opinions on all political subjects. Any person violating the provisions of this section shall be removed in the manner provided in the personnel code.

Appendix of Appellant (App.) 58 (quoting Section 5.3 of Ferguson City Charter). The plaintiffs contend that the provision violates their First Amendment rights to freedom of speech.

The District Court determined that the sponsoring provision, which prohibited employees from directly or indirectly sponsoring candidates for mayor or town council, was void for vagueness and enjoined future enforcement of that provision. This issue is not before us. All other prohibitions contained in the challenged provision were held to be constitutional as applied to the plaintiff Lloyd Thompson. The Court also determined that Alma Mendez-Thompson lacked standing to challenge the provision because she was not an employee of the City, and the City could take no action against her. The pendent state claim was dismissed by the District Court.[1]

II.

This Court has reviewed constitutional challenges to provisions such as the one contained in the Ferguson City Charter in the past. Specifically, in Reeder v. Kansas City Bd. of Police Comm'rs, 733 F.2d 543 (8th Cir. 1984), cert. denied, 479 U.S. 1065 (1987), we upheld a ban on political contributions by officers or employees of the Kansas City Police Department. Id. at 548. Though we did state that a restriction such as this "does abridge the freedom of speech in a literal sense," it was constitutionally permissible. Id. at 547. We noted that the Supreme Court has allowed the government to impose "substantial restrictions on [the] political activity" of its own employees and that First Amendment rights "must yield on occasion to the demands of public safety." Id. at 547. See Broadrick v. Oklahoma, 413 U.S. 601 (1973). Though the case at hand does not involve only a prohibition on funding, but also a prohibition on electioneering by government employees, the rationale used and the outcome reached in Reeder control the decision in this case. The District Court

---

[1]The plaintiffs allege that the challenged provision violates Mo. Rev. Stat. § 130.028 (2001). The District Court dismissed this claim without prejudice after disposing of all federal claims on summary judgment.

properly granted summary judgment to the City on Lloyd Thompson's First Amendment claim.

The District Court analyzed the justifications provided by the City to support the provision at issue. The Court determined that the provision, which affected only certain government employees, was "necessary to protect against the erosion of public confidence in the impartiality of the provision of Government services, in preserving the fairness of City elections, and in preserving the efficiency of the operations of the City." Int'l Ass'n of Firefighters v. City of Ferguson, No. 4:00CV00241, slip op. at 34 (E.D. Mo. April 17, 2001). Moreover, the Court noted that the restriction is narrowly tailored, because it applies only to local elections for mayor and council. Because greater restrictions may be placed on government employees than the public at large, the provision was held to be constitutional. Id. at 34-35; see Kelly v. Johnson, 425 U.S. 238, 245 (1976). We agree with the decision reached by the District Court.

III.

The District Court dismissed Ms. Mendez-Thompson's separate claim for lack of standing. She is not an employee of the City, and the challenged provision of the charter clearly does not apply to her. It does apply to her husband, but she must assert her own rights, not his. However, Ms. Mendez-Thompson claims that the City is threatening to interpret Section 5.3 in such a way as to chill her own exercise of First Amendment rights. In the past, when she lived in New York, she did participate in political activities, specifically a campaign for a councilwoman. App. 159. She also worked in campaign offices and made telephone calls on behalf of candidates. Id. at 160. After moving to Missouri, she participated in the re-election campaign of a candidate for city council in Calverton Park. But, in her view, the charter provision in question in this lawsuit has prevented her from participating in similar activities in the City of Ferguson, because she feared it would jeopardize her husband's

-4-

position as a city employee. Id. at 161. Her lawyer wrote a letter to the City inquiring about its interpretation of Section 5.3, specifically, whether her husband might suffer discipline if she ran for office, electioneered, or contributed money to a candidate for mayor or council. The City did not answer this letter. Ms. Mendez-Thompson has "felt intimidated to do anything of [a political] nature." Id. at 161.

As we have said, the charter obviously does not apply to Ms. Mendez-Thompson. The prohibition against "indirect," as opposed to "direct," political activities, however, does apply to Mr. Thompson. The Mayor, Steven Wegert, took the position, when testifying at a deposition under oath, that if an employee's spouse or children placed a yard sign in front of the house where they were residing with the employee, the employee would be considered to be "indirectly" engaging in political activity prohibited by the Charter. App. 177. A political contribution made from a couple's joint bank account would presumably be subject to the same logic. So it seems that Ms. Mendez-Thompson's apprehension that political activities on her part might be used to discipline her husband is not unreasonable, or, at least, that a sufficient issue as to its reasonableness has been made out to make summary judgment on the question inappropriate.

The political activities at issue here are at the core of the First Amendment. The City does not claim that it can directly regulate Ms. Mendez-Thompson's activities, but it does seem to claim that it can discipline, perhaps even discharge, her husband on account of her activities. If her testimony is believed, as it must be in this summary-judgment context, she has a reasonable apprehension that her husband might be economically disadvantaged in retaliation for political activities on her part. Does this claim assert her own rights, or merely those of her husband? We think it asserts her own rights. She has her own rights to participate in political activities, and if her husband were disciplined or lost his job, the economic adverse effect on her would be clear, especially, perhaps, in view of the fact that they have a joint bank account. We are not holding that a spouse has standing to assert a claim any time the

-5-

other spouse is injured.  But here, Ms. Mendez-Thompson is herself injured by having to give up, or hesitating to exercise, her First Amendment rights, and by the consequent loss of her husband's ability to provide the mutual support that the law imposes as a duty on both spouses.

Do these facts fit the law of standing?  We think the answer is yes.  Federal courts are authorized to decide only "cases" and "controversies." U.S. Const. Art. III, § 2.  In order to meet this requirement, a plaintiff must present a concrete dispute involving an injury to himself.  The law has been well summarized in New Hampshire Right to Life Political Action Committee v. Gardner, 99 F.3d 8, 13 (1st Cir. 1996):

> To clear the Article III hurdle, the party who invokes a federal court's authority must show that (1) he or she personally has suffered some actual or threatened injury as a result of the challenged conduct; (2) the injury can fairly be traced to that conduct; and (3) the injury likely will be redressed by a favorable decision from the court.

The leading Supreme Court case is Valley Forge Christian College v. Americans United for Separation of Church and State, Inc., 454 U.S. 464, 471-72 (1982).  Here, the City's threatened conduct is preventing Ms. Mendez-Thompson from exercising what she claims to be a First Amendment right, running for office, supporting candidates, or contributing to them.  Her apprehension that the City might act adversely if she exercised any of these rights seems not unreasonable.  The threatened consequence of her exercising the rights is the discipline or discharge of her husband, a city employee, substantially damaging her life and economic condition.  If the Court decides favorably on her claim, the city will be prevented from visiting this sanction upon her husband and her.

In addition to this constitutional element, the doctrine of standing also embraces "prudential" concerns. <u>Valley Forge</u>, 454 U.S. at 471. For example, the complaint must "fall within the zone of interests protected by the law invoked." <u>Allen v. Wright</u>, 468 U.S. 737, 751 (1984). This requirement is clearly met. The political activities in which the plaintiff wishes to engage fall within the very heart of the interests protected by the First Amendment. Next, a plaintiff ordinarily "must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties." <u>Warth v. Seldin</u>, 422 U.S. 490, 499 (1975). Here, as we have said, plaintiff has an interest of her own to defend. Not only is it her own political activities that she seeks to protect, but her own personal and economic status as well. Third, the suit must present more than "abstract questions of wide public significance which amount to generalized grievances, pervasively shared and most appropriately addressed in the representative branches." <u>Valley Forge</u>, 454 U.S. at 475 (internal quotations omitted). Again, there is no doubt that Ms. Mendez-Thompson qualifies under this requirement. Her own particular rights and intended activities are at stake, as well as "questions of wide public significance."

We are aware that other courts have reached a different conclusion on similar issues. In <u>Biggs v. Best, Best & Krieger</u>, 189 F.3d 989, 998-99 (9th Cir. 1999), for example, the husband and daughter of a city attorney were involved in local politics. A city councilman said that the city attorney would be fired unless her "family was silenced in Redlands community politics." <u>Id.</u> at 992. The lawyer, her husband, and her daughter brought suit against members of the city council. Summary judgment was granted for defendants on the basis of qualified immunity. On appeal, the Ninth Circuit held that the husband and daughter had no standing to raise claims of their own, but only enough standing to raise, derivatively, the same claims as the city attorney. The Court said:

> Although the loss of Julie Biggs' salary is not insubstantial, we hold that it is only sufficient to confer

> standing on Jerry and Holly Biggs to assert the same claims brought by Julie Biggs.

Id. at 998. The District Court's holding that the defendants were entitled to qualified immunity as against all plaintiffs was affirmed. The harm that might occur to the city attorney's husband and daughter was described as "indirect." Ibid.

Similarly, in Horstkoetter v. Department of Public Safety, 159 F.3d 1265, 1279 (10th Cir. 1998), a state trooper's wife wanted to place a yard sign in front of their house. The Court held that the wife had standing only to raise the same claim as her husband, and not to raise any separate claims of her own. The policy, the Court reasoned, applied only to troopers, and not troopers' spouses. No one but troopers could be punished under the policy. There was no possibility of disciplinary action against the spouses themselves. The Court conceded, citing Ben Oehrleins & Sons & Daughter v. Hennepin County, 115 F.3d 1372, 1379 (8th Cir.), cert. denied, 522 U.S. 1036 (1997), that indirect economic injury constitutes injury in fact, but only if the injury is neither speculative nor merely incidental. The Court acknowledged that the plaintiff wife was "without question, indirectly injured by the application of the policy to [her] husband[ ], because [he was] faced with a loss of income which would have affected the entire family." 159 F.3d at 1279. Still, the Court held, the wife had no claim of her own. If the law was valid as applied to the husband, it would also be valid as applied to discipline him on account of the activities of his wife. This holding is somewhat mitigated, however, by the Court's observation that, if the wife were a joint owner of the property, the husband could not be disciplined, because, in that event, he would have no power to prevent her from placing the sign in the yard, or to remove the sign after it had been placed there. Id. at 1276.

Finally, in English v. Powell, 592 F.2d 727, 730 (4th Cir. 1979), a husband employed by a county was demoted, and the husband was told that if his wife made

any further complaints to the employing board, he would be fired.  That harm occurred to the wife was not disputed:

> The objective harm results from Shands' demotion to store clerk and attendant decrease in salary; Mrs. Shands, who was a housewife while her husband was personnel manager, had to take a job to supplement the family income.

Still, the Court took the view that these injuries are too indirect and speculative to support Mrs. Shands's standing.

> It is a novel theory that a wife possesses such a propriety interest in her husband's position that a decrease in his salary gives her an actionable claim.

Ibid.

We express our disagreement with these cases with respect and with some reluctance, but also with a firm conviction.  The injury may be indirect, in that it occurs initially to the husband, through loss of his job.  It is nonetheless real and tangible.  That the wife has no proprietary interest in the husband's job we are ready to acknowledge, though she may, under state law, have a legal interest in the income that derives from the job.  The effect on her life and economic status from the firing of her husband is nevertheless quite substantial, and can be catastrophic.  The injury, to be sure, is not certain.  We do not know that the City will discipline or fire Mr. Thompson if Ms. Mendez-Thompson engages in any of the listed political activities.  But certainty of injury is not necessary, at least in the First Amendment context.  She should not be required to undertake a prohibited activity, and risk the consequent economic loss, in order to test the validity of the threatened application

of the charter. Possibly the charter can be construed (as the Tenth Circuit suggested in <u>Horstkoetter</u>) not to allow the imposition of sanctions on account of the wife's activity. The husband, for example, would have no legal right to prevent his wife from writing checks on their joint bank account to any payee she saw fit. And certainly the ability of the husband to discharge his legal duty of support would be impaired if he were demoted or discharged.

For all of these reasons, we conclude that the wife has standing. If Ms. Mendez-Thompson's claim were merely duplicative of her husband's, it wouldn't matter whether she had standing or not. The District Court's holdings with respect to the federal constitutional validity of the charter provision would cover her as well as him. Her claim, however, is not merely duplicative. We have held that Mr. Thompson can be disciplined if he violates the charter provision, except for the part about sponsoring, which the District Court held invalid. Ms. Mendez-Thompson's claim is distinct. It is that her own political rights cannot be chilled by the threat of discipline against her husband. For what he himself does, the City can discipline him, but if the wife's claim is valid as a matter of federal constitutional law, the City cannot discipline the husband for what she does. The District Court did not reach the merits of this claim, and neither do we. It should be addressed on remand.

IV.

It remains to determine the propriety of the District Court's dismissal of the pendent, or supplemental, state claim. This claim is that Section 5.3 of the Ferguson City Charter violates a Missouri statute, Mo. Rev. Stat. § 130.02 (2001). The claim is legally distinct from the federal claims, though it may not require any substantially different proof of facts on either side. After the District Court had disposed of the federal claims on summary judgment, it dismissed the pendent state claim, citing 28 U.S.C. § 1367(c)(3), providing that such state claims may be dismissed without prejudice when all federal claims have been dismissed. As appellants object on

appeal, all federal claims were not dismissed in this case. They were disposed of on summary judgment, but the plaintiffs' position was upheld with respect to the sponsoring provision of the charter. However, another portion of the supplemental-jurisdiction statute, 28 U.S.C. § 1367(c)(1), provides that a pendent state claim may be dismissed without prejudice if the state-law issue is novel or difficult. We leave the question of how to handle the state claim to the District Court on remand. After the merits of Ms. Mendez-Thompson's federal claim have been determined, the legal predicate will be clearer. The District Court would always be free, of course, to proceed to the merits of the state claim, in its discretion, even if one of the conditions in 28 U.S.C. § 1367(c) for dismissal of the state claim had been satisfied. We express no view on the appropriate outcome of that question.

V.

Accordingly, the District Court's dismissal of that portion of Mr. Thompson's federal claim that is involved in this appeal is affirmed. Its dismissal of Ms. Mendez-Thompson's federal claim is reversed, and the cause remanded for further proceedings with respect to that claim. Finally, the order dismissing the supplemental state claim without prejudice is vacated, and that issue should be reconsidered by the District Court on remand.

It is so ordered.

LOKEN, Circuit Judge, concurring.

I agree with Part II of the court's opinion, which holds that the City Charter is clearly constitutional insofar as it restricts political activity by City employee Lloyd Thompson. I also agree with what is implicit in Part III of the court's opinion -- that the validity under the First Amendment of an ordinance restricting political activities

by city employees may well be affected by the extent to which the ordinance restricts, or could be construed as restricting, the political activities of employee spouses.

Lloyd Thompson is the only one who will be sanctioned by the City if his spouse, Alma Mendez-Thompson, engages in political activity that violates the City Charter provision in question. If Alma Mendez-Thompson engaged in political activity and Lloyd Thompson were fired for that reason, he obviously would have standing to argue that the Charter would violate the First Amendment if construed as applying to her political activity. Likewise, prior to suffering any sanction, Lloyd Thompson should have standing to assert a First Amendment claim that the Charter provision is overbroad or vague because of its chilling effect on his spouse's political activities, even if it may validly limit his own political activities.

What is unusual in this case is that plaintiffs, in their zeal to establish Alma Mendez Thompson's standing to assert an independent claim, barely mentioned in the district court, and argued not at all to this court, that Lloyd Thompson has a First Amendment claim based on the Charter's chilling effect on his wife's freedom to engage in political activities. In my view, plaintiffs' myopia in this regard has led both courts into error. The district court should have considered this aspect of Lloyd Thompson's claim. And this court should remand for that purpose, rather than granting Alma Mendez Thompson standing to assert her own claim. Like the three other circuits that have considered the question, I conclude that in this situation the injury to the spouse derives from the injury to the employee (his actual or potential loss of income), and that the employee is the more appropriate party to litigate a facial challenge to the restraint. See Biggs v. Best, Best & Krieger, 189 F.3d 989, 997-99 (9th Cir. 1999); Horstkoetter v. Dept. of Public Safety, 159 F.3d 1265, 1278-80 (10th Cir. 1998); English v. Powell, 592 F.2d 727, 730 (4th Cir. 1979). Therefore, to eliminate a need to adjudicate multiplicitous claims, and to avoid possible problems of remedy if an ordinance or charter provision were held constitutional as to the

employee but invalid as to his spouse, I would hold that prudential concerns limit standing to the employee.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.