Margie PHELPS et al., on behalf of themselves and "Individual Picketers from the Westboro Baptist Church," Petitioners,

v.

Drue POWERS et al., Respondents.

Ralph O'Donnell, Counterclaim Plaintiff,

v.

Margie Phelps et al., Counterclaim Defendants.

No. 1:13–cv–00011.

United States District Court, S.D. Iowa, Western Division.

Oct. 31, 2013.

Michael A. Sciortino, Council Bluffs City Attorneys Office, Council Bluffs, IA, for Defendant/Counter Claimant.

Randall C. Wilson, Rita N. Bettis, Aclu of Iowa Foundation, Des Moines, IA, for Counter Defendant/Plaintiff.

Robert M. Livingston, Kristopher K. Madsen, Stuart Tinley Law Firm LLP, Council Bluffs, IA, for Defendant.

Meghan L. Gavin, Attorney General of Iowa, Jeffrey S. Thompson, Attorney General of Iowa, Des Moines, IA, for Intervenor.

## ORDER

ROBERT W. PRATT, District Judge.

Before the Court are the following two motions filed on June 11, 2013 by Margie Phelps, et al. (collectively "Petitioners"): Motion for Certification of Defendant Class ("Motion I") and Motion for Certification of Petitioner Class ("Motion II"). Clerk's Nos. 9–10. On July 11, 2013, Respondent Ralph O'Donnell ("O'Donnell") resisted Motion I. Clerk's No. 20. The other two Respondents, Drue Powers ("Powers") and Joe Sampson ("Sampson"), resisted both Motions I and II on July 16, 2013. Clerk's No. 21. On July 22, 2013, Petitioners replied only to Respondents'[1] two resistances to Motion I.[2] Clerk's No. 22.

During the Rule 16 scheduling conference, held on August 14, 2013, *see* Clerk's No. 32, the Court asked that Petitioners file supplemental briefing explaining why they believe that certifying the two proposed classes is necessary to obtaining the requested relief in this lawsuit. On September 27, 2013, Petitioners complied. Clerk's No. 54. On October 15, 2013, Powers and Sampson filed their response to Petitioners' supplemental brief, to which Petitioners replied on October 17, 2013. Clerk's Nos. 57–58. The Motions are fully submitted.

---

1. The term "Respondents" is used in this Order to refer collectively to all three named Respondents.

2. The next day, July 23, 2013, Powers and Sampson responded to Petitioners' reply. Clerk's No. 23. Since neither of them requested leave to file this sur-reply, however, the Court will not consider it. *See* LR 7(e) & (g) (allowing the filing of resistance briefs and reply briefs without leave of court and noting that reply briefs are ordinarily unnecessary).

## I. FACTUAL BACKGROUND

This lawsuit arises out of allegations that, on several occasions in connection with public demonstrations organized by Petitioners, Respondents enforced Iowa's flag abuse statutes, which Petitioners claim are unconstitutional, thus depriving Petitioners of their First Amendment rights. *See* Second Am. Compl. (Clerk's No. 30) ¶¶ 16, 18–21, 25–29. At issue are the following three Iowa Code provisions— §§ 718A.1A, 718A.6, and 723.4(6). *Id.* ¶¶ 42(a)-(c). Petitioners seek (1) a declaration from this Court that these provisions are unconstitutional, both on their face and as applied to Petitioners and the proposed petitioner class; (2) an injunction [3] prohibiting the future enforcement of §§ 718A.1A and 723.4(6); and (3) attorney fees and costs. *Id.* at 3, 11–12.

## II. LAW AND ANALYSIS

### A. *Proposed Classes*

Petitioners move the Court for an order certifying a class of "individuals who demonstrate as, or in conjunction with, members of the Westboro Baptist Church of Topeka Kansas [ ("Church") ]." Mot. II at 1. Petitioners clarify that this proposed class "does not include demonstrators who merely show up to … [the Church's] protests without … [its] invitation." *Id.* n. 1. Because the Church's membership changes over time, the proposed class is defined in such a way as to include future "members and supporters." *Id.* ¶ 3. Petitioners also seek to certify a class of respondents "consisting of all active duty county sheriffs and municipal police chiefs in the State of Iowa." Mot. I at 1.

### B. *Class Certification Standard*[4]

To grant Motions I and II, the Court must find that the proposed classes satisfy the requirements of Rule 23(a), and that they also fit within one of the categories of Rule 23(b). *See* Fed.R.Civ.P. 23(a) & (b). Section (a) of Rule 23 sets forth the four prerequisites for any class action:

(1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Section (b) then lays out the following additional requirements that must be satisfied, depending on the type of class action:

(1) the prosecution of separate actions by or against individual members of the class would create a risk of

(A) inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class, or

(B) adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests; or

(2) the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole; or

(3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

In addition, numerous courts have recognized the "implicit" requirement that the class definition must be drafted in such a way as to

---

**3.** Initially, Petitioners requested both a temporary and a permanent injunction. *See* Second Am. Compl. (Clerk's No. 30) at 12 ¶ C. During the Rule 16 scheduling conference held on August 14, 2013, however, Petitioners informed the Court that they were no longer seeking a temporary injunction.

**4.** The class certification standard, as laid out in this Section, applies equally to both the proposed petitioner class and the proposed respondent class. *See Doe v. Miller*, 216 F.R.D. 462, 466 (S.D.Iowa 2003) ("The analysis of the proposed Defendant class is largely identical to that for the Plaintiff class.").

ensure that membership is ascertainable by some objective standard. *See, e.g., In re Teflon Prods. Liab. Litig.*, 254 F.R.D. 354, 360 (S.D.Iowa 2008) (collecting cases).

▓▓▓ Plaintiffs, as the party moving for class certification, bear the burden of "affirmatively demonstrat[ing] ... [their] compliance with ... Rule [23]." *See Wal–Mart Stores, Inc. v. Dukes*, —— U.S. ——, 131 S.Ct. 2541, 2551, 180 L.Ed.2d 374 (2011); *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 614, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997); *Blades v. Monsanto Co.*, 400 F.3d 562, 568 (8th Cir.2005); *Bishop v. Comm. on Prof'l Ethics*, 686 F.2d 1278, 1288 (8th Cir. 1982). A district court has broad discretion in deciding whether a particular action complies with the requirements of Rule 23. *See Wright v. Stone Container Corp.*, 524 F.2d 1058, 1061 (8th Cir.1975) ("The trial court is, of necessity, clothed with a good deal of discretion in determining the appropriateness of a class action." (internal citation omitted)). "However, with great power comes great responsibility; the awesome power of a district court must be 'exercised within the framework of rule 23.'" *Klay v. Humana, Inc.*, 382 F.3d 1241, 1251 (11th Cir.2004) (internal citation omitted); *accord Dukes*, 131 S.Ct. at 2551 ("[C]ertification is proper only if the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied." (internal citations and quotation marks omitted)).

▓▓▓ " 'In determining the propriety of a class action, the question is not whether the ... plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met.' " *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 178, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974) (quoting *Miller v. Mackey Int'l, Inc.*, 452 F.2d 424, 429 (5th Cir.1971)). "In making the Rule 23 analysis, the substantive allegations in the plaintiff's complaint are accepted as true." *Lockwood Motors, Inc. v. Gen. Motors Corp.*, 162 F.R.D. 569, 573 (D.Minn. 1995) (citing *Jackson v. Rapps*, 132 F.R.D. 226, 230 (W.D.Mo.1990)). Nevertheless, "class determination generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's

cause of action, ... [and] there ... [is] [no]thing unusual about that consequence [because] [t]he necessity of touching aspects of the merits in order to resolve preliminary matters, ... [such as] jurisdiction and venue, is a familiar feature of litigation." *Dukes*, 131 S.Ct. at 2552 (internal citations omitted); *accord Elizabeth M. v. Montenez*, 458 F.3d 779, 786 (8th Cir.2006) ("Though class certification is not the time to address the merits of the parties' claims and defenses, the 'rigorous analysis' under Rule 23 must involve consideration of what the parties must prove." (internal citations omitted)).

#### C. *Article III Standing—Proposed Petitioner Class*

▓▓▓ "The constitutional requirement of [Article III] standing is equally applicable to class actions." *Avritt v. Reliastar Life Ins. Co.*, 615 F.3d 1023, 1034 (8th Cir.2010) (internal citation omitted). Therefore, a proposed petitioner class "must be defined in such a way that anyone within it would have standing." *Id.* (internal citation and quotation marks omitted). In other words, "a named plaintiff cannot represent a class of persons who lack the ability to bring a suit themselves." *Id.* Applying this legal framework to the proposed class of petitioners in this case compels the conclusion that the proposed petitioner class cannot be certified. Petitioners define this class as "individuals who demonstrate as, or in conjunction with, members of the Westboro Baptist Church of Topeka Kansas." *See* Mot. II at 1. For reasons that follow, the Court finds that Petitioners have failed to define this proposed class to include only class members who have Article III standing.

▓▓▓ "[H]aving to give up, or hesitating to exercise, [one's] First Amendment rights" is a sufficient injury for Article III purposes. *Int'l Ass'n of Firefighters, Local 2665 v. City of Ferguson*, 283 F.3d 969, 973 (8th Cir.2002). Thus, when it comes to First Amendment rights, a plaintiff may suffer an injury-in-fact either by "having to give up" or by "hesitating to exercise" such rights. *See id.* It appears that at least some members of the proposed class of petitioners have not yet had to give up their First Amendment rights,

i.e., those members of the Church who, to date, have not participated in any demonstrations involving the U.S. flag.[5] Of course, these class members have suffered an injury-in-fact if they could demonstrate that they have hesitated or will hesitate to exercise their First Amendment rights as a result of the enforcement of the flag abuse statutes at issue in this case. The problem is that Petitioners have not even alleged that there is any evidence that the alleged enforcement of the challenged statutes has had such a chilling effect on these class members' exercise of their First Amendment rights. Therefore, it is possible that the continued enforcement of the statutes at issue will not have any chilling effect on at least some current members or supporters of the Church who have not yet had to give up their First Amendment rights. It is this type of proposed class members who have not suffered an injury-in-fact and, therefore, have no Article III standing. Accordingly, since the proposed petitioner class includes class members without Article III standing, the Court cannot certify this proposed class. As the analysis below demonstrates, however, lack of standing is not the only obstacle to class certification. *See infra* § II.E.

### D. *Rule 23 Analysis*[6]

Although it is Petitioners' burden to "affirmatively demonstrate ... compliance with ... Rule [23]," *see Dukes,* 131 S.Ct. at 2551, they limit such efforts to a mere mechanical recitation of the Rule's requirements, *see generally* Mots. I, II, & Pet'rs' Br. in Supp. of Their Mots. ("Pet's' Br.") (Clerk's No. 9–1). As cursory as Petitioners' Rule 23 analysis is, Respondents offer even less in resistance. *See* O'Donnell's Resistance to Mot. I (Clerk's No. 20) ¶¶ 2–5; Powers's & Sampson's Resistance to Mots. I & II (Clerk's No. 21) at 2. The Court is cognizant that litigation can be quite costly, and surmises that the parties' cursory briefing of the

Rule 23 issues can be explained by their desire to conserve financial resources. Conserving financial resources, however, does not absolve any litigant, including the parties in this case, from the obligation to develop one's legal arguments diligently. Here, unfortunately, the parties offer so little in support of their respective positions that the Court could not, even were it so inclined, engage in a meaningful analysis of the Rule 23 requirements as they apply to this case. For purposes of this Order, the Court need not determine whether briefing deficiencies by either party prove fatal to Petitioners' class certification motions. Assuming, *arguendo,* that Petitioners have demonstrated their compliance with Rule 23, the Court would nevertheless deny both of their class certification motions for the reasons set forth in Section II.E below.

### E. *Necessity of Class Certification*

"[I]n exercising its discretion to certify a class action, the court may take account of considerations not expressly dealt with in Rule 23." Wright & Miller, 7AA Federal Practice & Procedure § 1785.2 (3d ed.) (last updated April 2013). One such "non-rule factor that courts have considered in actions ... for injunctive or declaratory relief is whether there is a need for class relief." *Id.* Although some courts have rejected the use of this "non-rule" factor," the vast majority of courts have not felt so constrained, and the need requirement now seems well-accepted as an appropriate consideration." *Id.* Thus, "[w]hen declaratory and[/or] injunctive relief is sought on behalf of a class, and when the benefits of the relief sought will benefit all members of a proposed class, a court may exercise its discretion and decline to certify the class." *Women's Health Ctr. of W. Cnty., Inc. v. Webster,* 670 F.Supp. 845, 852 (E.D.Mo.1987) (citing *Ihrke v. N. States Power Co.,* 459 F.2d 566, 572 (8th

---

**5.** Petitioners have not alleged that all of the Church's current members and supporters have participated in at least one demonstration involving the U.S. flag and have been subjected to the enforcement of Iowa's flag abuse statutes.

**6.** Although the two proposed classes need only satisfy one of Rule 23(b)'s requirements, Petition-

ers seem to contend that both classes are certifiable under each of the Rule 23(b)'s subsections. *See* Mot. I ¶¶ 8–10; Mot. II ¶¶ 3–6, 9–10. For reasons stated in § II.E of this Order, however, there is no need for the Court to engage in any Rule 23 analysis.

Cir.1972), *vacated on other grounds and remanded with instructions to dismiss as moot,* 409 U.S. 815, 93 S.Ct. 66, 34 L.Ed.2d 72 (1972)). In such cases, "no useful purpose would be served by permitting the case to proceed as a class action." *Id.; accord Collins v. Marshall.,* 507 F.Supp. 83, 84 (W.D.Mo.1981) ("Class certification is not necessary to injunctive relief having broad effect.").

■ Petitioners argue that certifying the proposed petitioner and respondent classes is necessary to obtain the declaratory and injunctive relief they request in this lawsuit. *See generally* Pet'rs' Suppl. Br. re Necessity of Class Relief ("Pet'rs' Suppl. Br.") (Clerk's No. 54). In particular, Petitioners assert that law enforcement agencies in Iowa continue enforcing the State's flag abuse statutes, which remain unconstitutional despite the legislative amendments following *Roe v. Milligan,* 479 F.Supp.2d 995 (S.D.Iowa 2007),[7] and, therefore, only class-wide declaratory and injunctive relief can adequately protect their First Amendment rights. *See id.* at 2, 6, 14, 15. Petitioners summarize that whether class certification is necessary in this case "boils down to a question as to whether Petitioners will be able to show probability that ... Respondents have continued to ignore clearly established law." *Id.* at 2–3. Stated otherwise, Petitioners deduce that "[i]f ... Respondents have not been following the requirements of past court decisions, class-wide injunctive relief would be appropriate." *Id.* at 3. Having so concluded, Petitioners next contend that by requiring a showing of necessity at the class certification stage, the Court is "plac[ing] the cart before the horse ... [and] prematurely forc[ing Petitioners] into briefing a summary judgment action in order to at least, 'tentatively,' receive class certification." *Id.* at 4–5. After deducing that they must, in effect, prove the merits of their case in order to obtain class certification, Petitioners engage in a lengthy argument asserting that the post-*Roe* amendments were insufficient to render the statutes at issue in that case constitutional.[8] *See id.* at 6–15.

The Court agrees with Petitioners that an in-depth discussion of the merits of their claims at the class certification stage is premature. Where the Court and Petitioners part company is with the assertion that requiring Petitioners to show that a class action is necessary to obtain the relief requested in this case is actually tantamount to requiring Petitioners to "brief[ ] a summary judgment action in order to ... receive class certification." *See* Pet'rs' Suppl. Br. at 4–5. Indeed, contrary to Petitioners' assertion, whether class certification is necessary in this case does not "boil[ ] down to a question as to whether Petitioners will be able to show [a] probability that ... Respondents have continued to ignore clearly established law." *Id.* at 2–3. Rather, what Petitioners must show is that the requested relief cannot be obtained unless this lawsuit proceeds as a class action. To be fair, if Respondents and the proposed respondent class have ignored clearly established law in the past, that may signal a "need" for class certification. *See Matyasovszky v. Housing Auth. of City of Bridgeport,* 226 F.R.D. 35, 43 (D.Conn.2005) (finding that certification was necessary because of the plaintiffs' allegations that the defendant had "knowingly engaged in its discriminatory policy [ (maintaining certain low income housing units as "elderly only" in violation of clearly established federal statu-

---

**7.** The statutes at issue in *Roe* are the same statutes that are being challenged in this lawsuit. *Compare Roe,* 479 F.Supp.2d at 999–1000 *with* Second Am. Compl. ¶¶ 42(a)-(c).

**8.** As a part of this argument, Petitioners claim that "[t]he changes made by the Iowa legislature in response to the *Roe* decision were so immaterial, and unresponsive to ... [the *Roe]* decision and controlling case law that no enforcement official could reasonably assume that the amended statutes could continue to be enforced against the Petitioner's [sic] expressive conduct." Petr's' Suppl. Br. at 6. The Court finds no merit to such

an argument because duly enacted statutes are clothed with a presumption of validity. *See State v. Pilcher,* 242 N.W.2d 348, 353 (Iowa 1976) ("It is well settled regularly enacted statutes are accorded a strong presumption of constitutionality."). Furthermore, even assuming that the amended statutes were also unconstitutional, Petitioners cite no binding legal authority suggesting that law enforcement officials have a duty to determine independently whether a statute is unconstitutional. Indeed, doing so would invade the province of the courts.

tory and regulatory mandates that require ... [the defendant] to make those units equally available to all eligible disabled applicants) ] for years, despite clear guidance that in so doing it was violating federal law"). The problem is that Petitioners have failed to demonstrate that Respondents and the proposed respondent class continued to enforce the challenged flag abuse statutes *after Roe* held that they were unconstitutional but *before* their amendment by the Iowa legislature in response to *Roe*.[9] Indeed, Petitioners do not even make such allegations. Had Petitioners done so, they would have had a much stronger case for certifying the two proposed classes in this case.

Furthermore, even if Petitioners were correct in claiming that the challenged statutes remain unconstitutional because the post-*Roe* amendments failed to adequately address the deficiencies identified by that decision,[10] the Court would still conclude that there is no need for this lawsuit to be certified as a class action. Indeed, if the statutes at issue, as amended, are held to be unconstitutional,[11] such decision would be binding on all of the State's governmental subdivisions and law enforcement agencies and would inure to the benefit of all members of the proposed petitioner class, thus obviating the need for this lawsuit to proceed as a class action. *See Craft v. Memphis Light, Gas & Water Div.,* 534 F.2d 684, 686 (6th Cir.1976) ("As to a Rule 23(b)(2) class asserting claims to injunctive and declaratory relief, the district court properly recognized that such relief to the extent 'granted [would] ... accrue to the benefit of others similarly situated,' and, consequently, ... 'no useful purpose would be served by permitting this case to proceed as a class action' because 'the determination of the constitutional question can be made by

9. Nor have Petitioners demonstrated that Respondents and the proposed respondent class have ever systematically ignored any other clearly established law.

10. It is impossible and unnecessary for the Court to decide, at this stage, whether the post-*Roe* amendments were sufficient to render the statutes at issue constitutional. Indeed, this issue lies at the heart of Petitioners' claims in this case. To the extent that Petitioners ask the Court to find, at this stage of the litigation, that these amendments were insufficient so that Petitioners can demonstrate the requisite "need" for class certification, such request is denied.

11. There can be no dispute that if the challenged statutes are found to be unconstitutional on their face, such a declaration would inure to the benefit of Petitioners, the proposed petitioner class, and, indeed, even to people who are excluded from the proposed class. If, on the other hand, the statutes are found to be unconstitutional only as applied to Petitioners, such pronouncement would nevertheless benefit not only Petitioners, but also all members of the proposed petitioner class, even though the lawsuit did not proceed as a class action. *See Perry v. Dowling,* 888 F.Supp. 485, 493–94 (W.D.N.Y.1995) (concluding that class certification was unnecessary because "the plaintiff is seeking only injunctive and declaratory relief and the court can presume the defendants will apply any relief granted to all those affected by the relevant regulations"), *rev'd on the merits,* 95 F.3d 231 (2d Cir.1996); *Elam v. Barry,* 656 F.Supp. 140, 142–43 (S.D.Ohio 1986) (denying the plaintiff's class certification motion because "the declaratory and injunctive relief requested by plaintiffs would automatically accrue to the benefit of others similarly situated,

and, therefore, no useful purpose would be served by permitting this case to proceed as a class action" (internal citations and quotation marks omitted)), *rev'd on other grounds,* 841 F.2d 1297 (6th Cir.1988); *Green v. Williams,* 94 F.R.D. 238, 241–42 (E.D.Tenn.1980) ("Any ... declaratory and injunctive relief granted the plaintiffs would inure automatically to the benefit of the members of their putative class since, by definition, those persons must have possessed the same interest and suffered the same injury as the plaintiffs.... Under those circumstances, then, [n]o useful purpose would be served by permitting this case to proceed as a class-action, ... and for this case to proceed as a class-action would be unnecessary, inappropriate and unduly burdensome." (internal citations and quotation marks omitted)); *Marquez v. Kiley,* 436 F.Supp. 100, 109–10 (S.D.N.Y.1977) (denying the plaintiffs' motion for class certification where the plaintiffs, three citizens of Ecuador, sought declaratory and injunctive relief regarding the question of whether Immigration and Naturalization Service investigators must have a reasonable suspicion that an individual is an illegal alien prior to conducting an investigatory stop, given the defendants' substantial assurances that they would respect an adverse determination and consider themselves bound by it with regard to their normal practices); *Nelson v. Likins,* 389 F.Supp. 1234, 1239 (D.Minn.1974) (denying class certification of a lawsuit challenging the constitutionality of a welfare classification scheme carried out by the Minnesota Department of Public Welfare because if the plaintiffs prevail on the merits of their claims, "the relief granted will have to include a change in the basic policy of the Welfare Department and this will inure to the benefit of the plaintiffs and all others similarly situated").

the Court and the rules and regulations determined to be constitutional or unconstitutional regardless of whether this action is treated as an individual action or as a class action.'" (quoting *Ihrke,* 459 F.2d at 572)); *United Farmworkers of Fla. Housing Project, Inc. v. Delray Beach,* 493 F.2d 799, 812 (5th Cir.1974) ("Even with the denial of class action status, the requested injunctive and declaratory relief will benefit not only the individual appellants and the nonprofit corporation but all other persons subject to the [discriminatory] practice under attack."); *Galvan v. Levine,* 490 F.2d 1255, 1261 (2d Cir.1973) ("[A]n action seeking declaratory or injunctive relief against state officials on the ground of unconstitutionality of a statute ... is the archetype of one where class action designation is largely a formality, at least for the plaintiffs."); *Martinez v. Richardson,* 472 F.2d 1121, 1127 (10th Cir.1973) ("[A] class action was not demanded here because the same relief could be afforded without its use."); *Mills v. District of Columbia,* 266 F.R.D. 20, 22 (D.D.C.2010) ("Class certification is particularly unnecessary where ... 'the suit is attacking a statute or regulation as being facially unconstitutional.' ... In that circumstance, 'there would appear to be little need for the suit to proceed as a class action' because 'it can be assumed that if the court declares the statute or regulation unconstitutional then the responsible government officials will discontinue the [regulation's] enforcement.'" (internal citations omitted)); *Arnett v. Strayhorn,* 515 F.Supp.2d 690, 698 (W.D.Tex.2006) ("The only issue remaining in this case is Plaintiff's challenge to the constitutionality of the Texas Unclaimed Property statute.... No useful purpose would be served by requiring this case to proceed as a class because all individuals who are not a part of this action, but who are aggrieved by the Texas Unclaimed Property Law in the same manner as Plaintiff, will have the benefit of this Court's ruling concerning the statute's constitutionality."); *Johnson v. City of Opelousas,* 488 F.Supp. 433, 435–36 (W.D.La.1980) ("[A]

class action is unnecessary to insure an appropriate examination of the constitutionality of the [juvenile curfew] ordinance in question [because] [a]ny declaratory or injunctive relief given in the individual action of the named plaintiffs would inure to the benefit of other similarly situated minors."). Additionally, assuming that the statutes at issues are held to be unconstitutional, the Court would decline to issue an injunction on the assumption that "the Iowa prosecutorial authorities w[ould] give full credence to th[e] decision that the ... [challenged] statutes are unconstitutional[ ]." *See Roe,* 479 F.Supp.2d at 1014 (citing *Roe v. Wade,* 410 U.S. 113, 166, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973)). Thus, Petitioners have failed to demonstrate that class certification is necessary to obtain any of the requested relief in this lawsuit.[12]

### III. CONCLUSION

For the foregoing reasons, Petitioners' Motions I and II (Clerk's Nos. 9–10) are DENIED.

IT IS SO ORDERED.

---

12. If Petitioners prevail on the merits of their claims, they would also be entitled to attorney fees and costs, whether or not this lawsuit was prosecuted as a class action. Accordingly, similar to the declaratory and injunctive reliefs, class certification is not a prerequisite to obtaining a judgment for the attorney fees and costs incurred in prosecuting this lawsuit.