592 F.2d 727
 Donald R. ENGLISH, William R. Williams, and the A. B. C.
Employees Association of New Hanover County, Appellants,
v.
W. Douglas POWELL, Individually and as Administrator to the
New Hanover County Alcoholic Beverage Control Board, Charles
S. Carter, Individually and as assistant to the
Administrator, the New Hanover County Alcoholic Beverage
Control Board, John E. Mowbray, Pender P. Durham, Eugene W.
Edwards, Individually and as members of the New Hanover
County Alcoholic Beverage Control Board, Appellees.
E. A. SHANDS & Vera Shands, Appellants,
v.
W. Douglas POWELL, Individually and as Administrator to the
New Hanover County Alcoholic Beverage Control Board, the New
Hanover Alcoholic Beverage Control Board, and its Individual
members: John E. Mowbray, Pender P. Durham and W. Eugene
Edwards, Appellees.
William L. CLARK, Robert Kraus, Ledley B. Symmes, C. C.
Williams, Telford Davis, Bedford Jackson and
William T. Small, Appellants,
and
James J. Wall, ABC Employees Association, Donald R. English,
William R. Williams, E. A. Shands and wife, Vera
Shands, Counterclaim Defendants,
v.
W. Douglas POWELL, Individually and as Administrator of the
New Hanover County Alcoholic Beverage Control Board, Charles
S. Carter, Individually and as assistant to the
Administrator of New Hanover County Alcoholic Beverage
Control Board, the New Hanover County Alcoholic Beverage
Control Board, John E. Mowbray, William Rehder, W. Eugene
Edwards, Individually and as members of the New Hanover
County Alcoholic Beverage Control Board and Pender Durham, Appellees.
 Nos. 77-2500, 77-2560 and 78-1059.
 United States Court of Appeals,
Fourth Circuit.
 Argued Nov. 13, 1978.
Decided Jan. 31, 1979.
 
 James J. Wall, Wilmington, N. C. (Frank Cherry, Cherry & Wall, Wilmington, N. C., on brief), for appellants.
 J. W. Alexander, Jr., Charlotte, N. C. (Richard F. Kane, Charlotte, N. C., Cicero P. Yow, Wilmington, N. C., Blakeney, Alexander & Machen, Charlotte, N. C., Yow & Yow, Wilmington, N. C., on brief), for appellees.
 Before WINTER, RUSSELL and HALL, Circuit Judges.
 K. K. HALL, Circuit Judge:
 
 
 1
 In these consolidated appeals the plaintiff/appellants, (1) a personnel director and his wife, (2) two liquor store managers, and (3) seven liquor store employees allege that their constitutional rights were violated by the defendant/appellee, New Hanover County Alcoholic Beverage Control Board (hereinafter "Board.")[1] Each plaintiff with the exception of Vera Shands, See § I Infra, was an employee of the Board at the time of the incidents giving rise to the separate but related lawsuits. The district court granted summary judgment for the Board in each case, and we affirm.
 
 I. SHANDS
 
 2
 In 1974 and early 1975, the Board was reorganized upon recommendation of the New Hanover County Composite Board.[2] Plaintiff Vera Shands was vice-chairman of the Composite Board Committee assigned to plan and implement the reorganization. As one result of the reorganization, a personnel management position was created and was filled by Vera Shands' husband, plaintiff E. A. Shands. Mr. Shands had previously been a liquor store manager.
 
 
 3
 Several months after the initial reorganization and appointment of Mr. Shands, defendant W. D. Powell, a Board member, was appointed as chief administrator of the ABC system, making him Shands' immediate supervisor. Shands was bitterly and openly opposed to Powell's appointment while the appointment was being considered. In particular, he complained to Board members that there was a "lack of communication" between Powell and himself and that Powell was interfering with Shands' authority in matters concerning personnel management.
 
 
 4
 On October 9, 1975, the day of Powell's appointment, Powell and Shands met at Powell's request to discuss the problems created by Shands' attitude. A "heated discussion" ensued at this meeting, and much of the conversation is a matter of disputed fact. However, Shands does not deny that he agreed to voice any further complaints not to Board members but rather to Powell directly, i. e., "in the chain of command," although he states that he made this concession merely to gain time to discuss the matter with his wife and to seek legal advice. At the close of the conversation Powell told Shands that the position of personnel director was being abolished, but that Shands would be kept on at the administrative level in an advisory capacity.
 
 
 5
 That same evening Shands told his wife about the meeting with Powell. Mrs. Shands immediately became "irrational" and began making telephone calls to various Board members to complain about the treatment afforded her husband. Shands was unable to prevent his wife from making the calls, but he did take the telephone away from her several times to discuss both his situation and the propriety of Powell's appointment as chief administrator. The last call Mrs. Shands made was to Pender Durham, a Board member and good friend of the Shands'. Shands again took the phone away from his wife and spoke to Durham; at the close of the conversation Durham told him that, as a result of the calls made by Mrs. Shands to members of the Board, Powell would fire Shands the next morning.[3] Durham later called Powell to intercede for Shands, and Powell agreed to reconsider overnight.
 
 
 6
 The next morning Shands again met with Powell. Anticipating that he was about to be fired, he requested that he be reassigned to his former position of liquor store manager. Told that no such positions were available, he then requested assignment to the position of liquor store clerk. Powell responded that he would "think about it" and decide within three days whether Shands would be fired or reassigned; he added that, if Shands or his wife made any more complaints to members of the Board, Shands would immediately be fired. On October 13 Powell gave Shands a job as store clerk. Shands appealed to the Board for reinstatement to his former position and, after his request was denied, filed this lawsuit.
 
 A. Vera Shands
 
 7
 As a threshold issue we review the district court's dismissal of Vera Shands from this action on the ground that she has no standing. Mrs. Shands, a party plaintiff, alleged that her rights under the first amendment were infringed during the sequence of events which led to her husband's demotion. Although Mrs. Shands admits that she cannot rest her claim to relief solely on the legal rights of her husband, Warth v. Seldin, 422 U.S. 490, 498-99, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975), she alleges that her injuries meet the test suggested by Bigelow v. Virginia, 421 U.S. 809, 95 S.Ct. 222, 44 L.Ed.2d 600 (1975): subjective chill on her first amendment rights And present objective harm. 421 U.S. at 816-17, 95 S.Ct. 222, citing Laird v. Tatum,408 U.S. 1, 92 S.Ct. 2318, 33 L.Ed.2d 154 (1972). The subjective chill results from Powell's statement to E. A. Shands that, if his wife made any further complaints to the Board, Shands would be fired. The objective harm results from Shands' demotion to store clerk and attendant decrease in salary; Mrs. Shands, who was a housewife while her husband was personnel manager, had to take a job to supplement the family income.
 
 
 8
 We agree with the district court that these injuries are too indirect and speculative to support Mrs. Shands' standing as plaintiff in a lawsuit filed to challenge the propriety of her husband's demotion. It is a novel theory that a wife possesses such a proprietary interest in her husband's position that a decrease in his salary gives her an actionable claim. Plaintiffs admit that this theory is without precedent, and we decline to write new law on the facts of this case. We therefore affirm the dismissal of Vera Shands from this lawsuit.
 
 B. E. A. Shands
 
 9
 The linchpin of E. A. Shands' claim for relief is his contention that he was discharged from his job as personnel manager for exercising his first amendment right to speak out on an issue of public concern. Pickering v. Board of Education, 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968). The district court granted summary judgment for defendant Board and the individual defendants, holding that Shands had voluntarily requested his demotion to clerk and had not been constructively discharged, See J. P. Stevens & Co., Inc. v. N. L. R. B., 461 F.2d 490 (4th Cir. 1972), and that, in any event, his speech was not constitutionally protected within the meaning of Pickering.
 
 
 10
 Shands, of course, requested his demotion to store clerk, and the Board relies on Smith v. Board of Regents, 426 F.2d 492 (5th Cir. 1970) to support its position that Shands' voluntary action precludes any subsequent assertion that his constitutional rights were infringed. We are not persuaded that Smith is dispositive. There a college professor was informed several times by the chairman of his department that the president "had doubts about" recommending him for reappointment; the professor submitted his resignation. Several weeks later he requested reinstatement, charging that his resignation had been prompted by his concern that he would be fired. The college refused to rehire him. In a subsequent lawsuit Smith alleged that his "dismissal" from public employment violated his constitutional rights. The district court found from all the evidence adduced at trial that he had not been dismissed and, since his resignation had been voluntary, it could not be termed a constructive discharge. On appeal, the Fifth Circuit affirmed the findings of the lower court.
 
 
 11
 Here, Shands alleges that Pender Durham told him on October 9 that he would be fired the following morning. This factual situation is sufficiently different from Smith that we cannot say with assurance, on motion for summary judgment, that Shands' request for demotion was voluntary.[4] In any event, the district court did not rest its decision on that ground alone. We therefore address the issue of whether Shands' demotion was impermissible under the rationale of Pickering v. Board of Education, supra.
 
 
 12
 In Pickering, a public school teacher was fired for writing a letter to the editor of a newspaper in which he criticized budgetary policies of the school board. The Supreme Court, finding that the teacher had spoken out as a private citizen on an issue of public concern, held that the dismissal was therefore constitutionally infirm. See also Bernasconi v. Tempe Elementary School District No. 3, 548 F.2d 857 (9th Cir. 1977), Cert. denied, 434 U.S. 825, 98 S.Ct. 72, 54 L.Ed.2d 82 (1978). Here, Shands' complaints to members of the Board are more like those characterized in Chitwood v. Feaster, 468 F.2d 359, 360-61 (4th Cir. 1972):
 
 
 13
 Some of the affidavits refer to what seems to be bickering and running disputes with the department heads. We do not intend to suggest that that kind of speech is protected by the First Amendment in the sense that it may not be considered in connection with the termination of the employment relationship. A(n employer) has a right to expect a(n employee) to follow instructions and to work cooperatively and harmoniously with the head of the department. If one cannot or does not, if one undertakes to seize the authority and prerogatives of the department head, he does not immunize himself against loss of his position simply because his noncooperation and aggressive conduct are verbalized.
 
 
 14
 See also Place v. Shepherd, 446 F.2d 1239 (6th Cir. 1971).[5]
 
 
 15
 The record before us admits of only one construction. Shands was bitterly opposed to the appointment of Powell as his direct superior. Powell, angered at Shands' "politicking" with the Board to voice his opposition, demanded and received Shands' assurance that, henceforth, he would work cooperatively with Powell and would observe the "chain of command" to voice any complaints. Shands and his wife broke that commitment on the same day it was made. Powell would have been justified in firing his recalcitrant personnel manager, See Cooper v. Johnson, supra ; he in no way violated Shands' constitutional rights in acceding to Shands' own request for the lesser sanction of demotion. In sum, there are limits to Pickering. See Abood v. Detroit Board of Education, 431 U.S. 209, 97 S.Ct. 1782, 1797 n. 27, 52 L.Ed.2d 261 (1977).
 
 
 16
 Therefore, the judgment of the district court granting summary judgment for defendant Board and the individual defendants is affirmed.
 
 II. ENGLISH
 
 17
 Plaintiffs Donald R. English and William R. Williams are liquor store managers, employed by the defendant Board,[6] who belong to the ABC Employees Association of New Hanover County (hereinafter "Association"), also a plaintiff in this action. Plaintiffs claim that their constitutional rights under the first and fourteenth amendments were infringed when they were threatened with dismissal from their jobs unless they resigned from the Association.
 
 
 18
 The Board received a letter from the Association's counsel on November 21, 1975, requesting a meeting to discuss "terms and conditions of employment." The Board, concerned about the legality of the requested meeting,[7] deferred action while it sought a ruling from the Attorney General of North Carolina.
 
 
 19
 In its letter the Association claimed to represent 90% Of the ABC employees; simple arithmetic indicated to the Board that most of its liquor store managers must therefore be Association members. Charles Carter, Assistant Administrator of the Board, called several managers that afternoon to discuss the implications of their membership. Plaintiffs allege that Carter told them that, unless they resigned from the Association immediately, they would be fired.[8] On November 22, after meeting with their attorney, plaintiffs went to Carter's house to discuss the matter with him again. They allege that the threat of dismissal was repeated. Plaintiffs made no attempt to discuss or confirm the threat with administrator Powell or with the Board; rather, they filed this lawsuit on November 24.
 
 
 20
 We agree with the conclusion of the district court that summary judgment for defendant Board was appropriate. First, it is unclear whether the plaintiffs, store managers, have any constitutional or statutory right to belong to the Association. Beasley v. Food Fair of North Carolina, Inc., 416 U.S. 653, 94 S.Ct. 2023, 40 L.Ed.2d 443 (1974) (private employer may prohibit store managers from joining union); Elk Grove Firefighters Local No. 2340 v. Willis, 400 F.Supp. 1097 (N.D.Ill.1975), Aff'd, 539 F.2d 714 (7th Cir. 1976) (city may prohibit officers in fire department from joining union). See also York Co. Fire Fighters Ass'n v. County of York, 589 F.2d 775 (4th Cir. 1978). Although the Association denies emphatically that it is a labor organization or union, it did request a meeting to discuss terms and conditions of employment. However, we need not decide whether this argument is one of substance or semantics, since we rest our affirmance upon the simple fact that plaintiffs have suffered no harm which demands redress in the federal courts.
 
 
 21
 On December 19, 1975, the Board issued the following Statement of Policy :
 
 
 22
 Our employees are free to join and support an employees union or any organization they wish, so long as they do not thereby interfere with work or reasonable discipline within our organization. No one has been punished or threatened with punishment by an official of this agency on account of such activities. They will not be punished or threatened with punishment for that in the future.
 
 
 23
 This does not mean, however, that such employee activities will be permitted to interfere with the efficient and uninterrupted operation of this public business. Any interference with such efficient operations, from whatever source and for whatever reason, will be dealt with in accordance with good business judgment and the responsibility imposed upon the Board by the public.
 
 
 24
 It is uncontroverted that the plaintiffs have not been fired or otherwise disciplined for their membership in the Association. In addition, the Board in its Statement of Policy unequivocally disclaims any intention to take such action in the future. On these facts we hold that plaintiffs have failed to demonstrate either subjective chill on their first amendment rights[9] or any present objective harm or threat of specific future harm. Bigelow v. Virginia, 421 U.S. 809, 95 S.Ct. 2222, 44 L.Ed.2d 600 (1975). Although plaintiffs were not required to exhaust remedies before filing this suit, Monroe v. Pape, 365 U.S. 167, 183, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961), we note that this entire matter could have been settled promptly through communication rather than litigation.
 
 
 25
 Therefore, the judgment of the district court granting summary judgment for defendant Board and the individual defendants is affirmed.
 
 III. CLARK
 
 26
 Plaintiffs are seven former employees of the Board who were laid off from their jobs on or about March 27, 1976;[10] they allege that the Board took this action to punish them for their membership in the Association and to discourage other ABC employees from joining the Association.
 
 
 27
 The following facts are undisputed. During the fiscal year ending June 30, 1975, the ABC system of New Hanover County ranked 98/119 in overall efficiency in the State. The Board, seeking ways to improve that rating, concluded Inter alia that a reduction in personnel was necessary. The employees were notified on October 27, 1975 that a reduction in the work force would be accomplished through the normal process of attrition. By March 27, 1976 the anticipated attrition had not occurred. The Board therefore laid off ten employees, eight of whom were members of the Association. Plaintiff C. C. Williams was the president of the Association; plaintiff Ledley B. Symmes was the vice-president. The ten employees laid off were those with the least seniority in the ABC system.
 
 
 28
 From these facts the plaintiffs would have us infer that the layoffs were improperly motivated by the Board's animus toward the Association, an organization which has been in existence since 1967. Notwithstanding plaintiffs' bare assertions, the record admits of but one construction. All of the evidence demonstrates that the layoffs were prompted by business necessity. Likewise, the evidence shows that the layoffs were accomplished according to seniority accepted business practice. And although the parties dispute whether plaintiff Symmes' seniority was correctly computed,[11] the dispute is at best a good-faith difference of opinion between Symmes and the Board. In sum, plaintiffs have failed to produce any evidence which would support the allegations in their complaint.
 
 
 29
 Therefore, the judgment of the district court granting summary judgment for defendant Board and the individual defendants is affirmed.
 
 
 30
 AFFIRMED.
 
 
 
 [1]
 The Administrator, Assistant Administrator and members of the Board were also named as party defendants, in their individual and/or official capacities. See Shands v. Powell et al., C/A No. 75-0076-CIV-7 (E.D.N.C., Sept. 29, 1977); Clark et al. v. Powell et al., C/A No. 76-0022-CIV-7 (E.D.N.C., Nov. 3, 1977); English et al. v. Powell et al., C/A No. 75- 0075-CIV-7 (E.D.N.C., Sept. 29, 1977)
 
 
 [2]
 The Composite Board, made up of the Board of County Commissioners, the County Board of Health and the County Board of Education, oversees the election, removal and replacement of ABC Board members. Plaintiff Vera Shands had been a member of the Composite Board since 1971
 
 
 [3]
 Durham testified that he had said only, "Don't be surprised if (Powell fires you tomorrow morning.") However, since this case is in the posture of summary judgment, we accept Shands' version of the conversation as accurate
 
 
 [4]
 In similar vein, we are reluctant to accept as dispositive the district court's conclusion that Shands was not constructively discharged. We do note that this case is a weak one for application of the doctrine, which had its genesis in the labor relations area, E. g., J. P. Stevens & Co. v. N. L. R. B., supra, but has been extended and held applicable to civil rights claims. E. g., Muller v. U. S. Steel Corp., 509 F.2d 923 (10th Cir.), Cert. denied, 423 U.S. 825, 96 S.Ct. 39, 46 L.Ed.2d 41 (1975) (ethnic discrimination); Jacobs v. Martin Sweets Co., Inc., 550 F.2d 364 (6th Cir.), Cert. denied, 431 U.S. 917, 97 S.Ct. 2180, 52 L.Ed.2d 227 (1977) (sex-based discrimination). A constructive discharge takes place "when an employer deliberately renders the employee's working conditions intolerable and thus forces him to quit his job." Muller v. U. S. Steel Corp., 509 F.2d at 929
 Shands' claim that his job was made intolerable appears to rest upon the single statement of Pender Durham on October 9 that Powell would fire Shands the next morning. This is simply not the type of systematic harassment which would support a finding of constructive discharge. Compare Calcote v. Texas Educational Foundation, 578 F.2d 95 (5th Cir. 1978) (evidence of regular pattern of discrimination in pay and merit increases sufficient for finding of constructive discharge) With Muller v. U. S. Steel Corp., supra (no constructive discharge where plaintiff was excluded from consideration for foreman's position and later downgraded to laborer). In addition, Shands' evidence adduced thus far would not even support an inference that Powell or the other Board members deliberately set out to make his position intolerable; on the contrary, their actions were a response to the telephone campaign waged by Shands' wife.
 
 
 [5]
 Givhan v. Western Line Consolidated School District et al., --- U.S. ----, 99 S.Ct. 693, 58 L.Ed.2d 619 (1979), recently decided by the Supreme Court, does not compel a different conclusion. There the court held that an employee does not forfeit constitutional protection when he communicates privately to the employer his dissenting views on an issue of public concern (race discrimination). Our decision today does not turn on the fact that Shands' comments were privately addressed to members of the Board; rather, the substance of the comments was not a matter of public concern but merely a complaint about his inability to work harmoniously with Powell, and "the public is not interested in (Shands') private ambitions." Cooper v. Johnson, 590 F.2d 559 at 562 (4th Cir. 1979)
 
 
 [6]
 The lawsuit was originally instituted as a class action. The district court denied class certification, finding that the proposed class would contain seven members at most, and thus joinder was not impracticable. Fed.R.Civ.P. 23(a). Plaintiffs do not appeal from this ruling
 
 
 [7]
 N.C.Gen.Stat. § 95-98 (1975 Repl.Vol.) states:
 Contracts between units or government and labor unions, trade unions or labor organizations concerning public employees declared to be illegal. Any agreement, or contract, between the governing authority of any city, town, county, or other municipality, or between any agency, unit, or instrumentality thereof, or between any agency, instrumentality, or institution of the State of North Carolina, and any labor union, trade union, or labor organization, as bargaining agent for any public employees of such city, town, county or other municipality, or agency or instrumentality of government, is hereby declared to be against the public policy of the State, illegal, unlawful, void and of no effect.
 
 
 [8]
 Carter denies at any time having threatened the managers with dismissal from their jobs. However, since this case is in the posture of summary judgment, we accept plaintiffs' version of the conversations as accurate
 
 
 [9]
 Plaintiffs state that three store managers resigned from the Association after their conversations with Carter, and argue that this is some evidence of "subjective chill." However, all three managers submitted affidavits stating that their actions were in no way related to Carter's threats
 
 
 [10]
 The lawsuit was originally instituted as a class action. The district court denied class certification, finding that the proposed class would contain eight members at most, and thus joinder was not impracticable. Fed.R.Civ.P. 23(a). Plaintiffs do not appeal from this ruling
 
 
 [11]
 Symmes became a full-time permanent employee on August 15, 1973. Prior to that time and prior to his entry into military service he did work for the Board; however, he did not participate in the system's insurance or retirement programs during this time. The Board contends that he was therefore not a "permanent" employee until August 15, 1973, and did not consider this earlier time period in computing Symmes' seniority