**Michael E. MOZINGO, Plaintiff,**

v.

**The SOUTH FINANCIAL GROUP, INC., and its wholly-owned subsidiaries, Carolina First Bank, and Carolina First Securities; UVEST Financial Services Group, Inc.; Edward Hausgen; Rocco Quintana; Thomas Ryan; William Hann; Scott Plyler; and, James Terry, Defendants.**

C.A. No. 2:07–00279–PMD.

United States District Court,
D. South Carolina,
Charleston Division.

June 6, 2007.

Anne E. Mjaatvedt, Terry Ann Rickson, Terry Ann Rickson Esquire Inc., Charleston, SC, for Plaintiff.

Cory E. Manning, Pamela J. Roberts, Nelson Mullins Riley and Scarborough, Columbia, SC, for Defendants.

### ORDER

PATRICK MICHAEL DUFFY, District Judge.

This matter is before the court upon Defendants' Motion to Dismiss. For the reasons set forth herein, the court grants Defendants' motion.

### BACKGROUND

Defendants Carolina First and UVEST hired Michael E. Mozingo ("Mozingo" or "Plaintiff") as a senior financial advisor on October 1, 2004. (Compl.¶ 15.) Though Plaintiff began under the supervision of Bruce Snell, in October 2005, Plaintiff was informed that he would be under the supervision of Rocco Quintana ("Quintana"), who had been hired by Carolina First/ UVEST to run the "Wealth Management Program" for Charleston. (Compl.¶¶ 17–18.)

On or about November 10, 2005, Quintana directed Plaintiff to transfer a customer's existing account from Bank of America to Carolina First, and the transfer was

to occur under Plaintiff's brokerage number. (Compl.¶ 19.) Plaintiff opened the necessary account at Carolina First but did not complete the transfer immediately. (Compl.¶ 23.) Before Plaintiff completed the transfer, his supervisor told him that the customer, Elsie Coyne ("Coyne"), had died. (Compl.¶¶ 23–25.) Later, in early 2006, Quintana directed Plaintiff to give the paperwork to another employee, Edward Hausgen ("Hausgen"). (Compl.¶ 26.) Plaintiff subsequently discovered the transfer had taken place under his broker number. (Compl.¶ 27.) On examining the transfer documents, Plaintiff found a form allegedly signed by Coyne on March 23, 2006 (even though she died several months before this date) and by Hausgen on March 27, 2006. (Compl.¶ 28.) The account was not set up as an estate account, and it did not note Coyne's death. (Compl.¶ 29.) Furthermore, the "ID Type" section on this transfer form indicated that Government identification of Coyne had been checked, but Coyne died four months before the form was signed.[1] (Compl.¶ 30.)

Concerned the signature was a forgery and that an employee fraudulently affirmed an identity check, Plaintiff reported his concerns to Arthur Swanson ("Swanson"), Executive Vice President of Carolina First Bank in Charleston, on April 10, 2006. (Compl.¶ 31.) Plaintiff and Swanson then reported the transfer to William Hann, Senior Vice–President of Carolina First, and to Scott Plyler, Regional Executive Vice–President for the South Coast region of Carolina First Bank. (Compl.¶ 33.) On April 11, 2006, at Swanson's direction, Plaintiff reported his concerns via facsimile to James Terry ("Terry"), President of Carolina First Bank. (Compl.¶ 35.)

Within a few hours of faxing Terry, Plaintiff received a phone call from Thomas Ryan, Quintana's supervisor. (Compl.¶ 37.) Plaintiff also received numerous phone messages from Quintana and Hausgen. (Compl.¶ 37.) Plaintiff alleges that both Quintana and Hausgen accused Plaintiff of being insubordinate and told Plaintiff his actions were inappropriate. (Compl.¶ 37.) Plaintiff alleges that during a phone conversation, Quintana stated to Plaintiff, "You realize you have screwed your ass forever." (Compl.¶ 38.) Plaintiff further alleges that Quintana "told him to report to his office that afternoon. Quintana implied, and Mozingo knew, that he was going to be fired." (Compl.¶ 38.)

Mozingo alleges that he was "constructively discharged on April 11, 2006, when, believing he was going to be fired for reporting potential fraud, Mozingo walked past Hausgen, and handed his resignation to Quintana." (Compl.¶ 43.) Plaintiff explains he was concerned Quintana "would designate the termination as involuntary, on the grounds of insubordination, on Mozingo's Form U5, *Uniform Termination Notice for Securities Industry Registration*. The Form U5 is required for brokers to conduct securities transactions for commission, and listing a termination as involuntary or for insubordination would make it difficult, or impossible for Mozingo

---

**1.** An investigation revealed that Coyne's daughter, Patricia Anderson, has signed Coyne's name to the form. Anderson was Coyne's attorney in fact pursuant to a power of attorney, and Coyne named Anderson as her personal representative. The United States Department of Labor's findings on Mozingo's complaint indicated that "[i]n March of 2006, the client's daughter signed the client's name completing the account transfer and the transfer appeared to be in accordance with the client's wishes." (Defs.' Resp. in Opp'n to Mot. to Refer Ex. B at 2.)

to obtain further employment as a broker." (Compl.¶ 39.)

On July 7, 2006, Plaintiff filed a complaint with the United States Department of Labor, Occupational Health and Safety Administration. (Compl.¶ 48.) Plaintiff alleges he "timely filed all objections, request for a hearing and petition for review to the Administrative Review Board (hereinafter "ARB"), and exhausted all administrative remedies." (Compl.¶ 48.) On January 3, 2007, "180 days after filing his complaint, and after the Secretary of Labor failed to issue a final decision, Plaintiff filed and served a 'Notice of Intent to File a Complaint,' pursuant to 29 C.F.R. § 1980.114." (Compl.¶ 49.) On January 26, 2007, Plaintiff filed the instant action, asserting Defendants violated Section 806 of Title VIII of the Sarbanes–Oxley Act of 2002 (the "Act"), 18 U.S.C. § 1514A. (Compl.¶¶ 50–60.)

Defendants The South Financial Group Inc.; Carolina First Bank; Carolina First Securities; Hausgen; Quintana; Ryan, Hann; Plyler; and Terry filed a Motion to Dismiss on March 7, 2007. Defendant UVEST Financial Services Group Inc. joined in this motion on March 27. Defendants argue this case should be dismissed because (1) Plaintiff fails to allege an adverse employment action, (2) Plaintiff fails to allege activity protected by the Act, and (3) the court lacks subject-matter jurisdiction. Plaintiff responded on March 28, arguing (1) he alleged sufficient facts on the face of his Complaint to state a cause of action pursuant to the Act, and (2) the court "has subject matter jurisdiction over this lawsuit under the plain language of the Act where the Plaintiff has timely pursued his remedies through the multi-step process provided by statute and by regulations promulgated pursuant to the Act." (Pl.'s Resp. in Opp'n to Mot. to Dismiss at 2.)

## STANDARD OF REVIEW

A Rule 12(b)(6) motion should be granted only if, after accepting all well-pleaded allegations in the complaint as true, it appears certain that the plaintiff cannot prove any set of facts in support of his claims that entitles him to relief. *See Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir.1999). The complaint should not be dismissed unless it is certain that the plaintiff is not entitled to relief under any legal theory that plausibly could be suggested by the facts alleged. *See Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir.1993). Further, "[u]nder the liberal rules of federal pleading, a complaint should survive a motion to dismiss if it sets out facts sufficient for the court to *infer* that all the required elements of the cause of action are present." *Wolman v. Tose*, 467 F.2d 29, 33 n. 5 (4th Cir.1972).

Similarly, when evaluating a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) on the grounds that the complaint fails to state facts upon which jurisdiction can be founded, "all the facts alleged in the complaint are assumed to be true and the plaintiff, in effect, is afforded the same procedural protection as he would receive under a Rule 12(b)(6) consideration." *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir.1982). The plaintiff has the burden of proving jurisdiction, and the court may go beyond the face of the complaint and consider evidence without converting the motion into one for summary judgment. *Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir.1991).

## ANALYSIS

### A. Motion to Dismiss for Lack of Subject Matter Jurisdiction

In their Motion to Dismiss, Defendants assert Plaintiff's action should be dis-

missed for lack of subject matter jurisdiction because since the Secretary had issued a final decision, Plaintiff was required to appeal directly to the United States Court of Appeals. (Mot. to Dismiss at 14.) Defendants also assert dismissal is required due to Plaintiff's bad-faith delay. (Mot. to Dismiss at 16.) Plaintiff, on the other hand, asserts the court has subject matter jurisdiction "under the plain language of the Act where the Plaintiff has timely pursued his remedies through the multi-step process provided by statute and by regulations promulgated pursuant to the Act." (Resp. in Opp'n to Mot. to Dismiss at 2.) Furthermore, Plaintiff argues there was no bad-faith delay on his part. (Resp. in Opp'n to Mot. to Dismiss at 2.)

■ "Before an employee can assert a cause of action in federal court under the Sarbanes–Oxley Act, the employee must file a complaint with the Occupational Safety and Health Administration ('OSHA') and afford OSHA the opportunity to resolve the allegations administratively." *Hanna v. WCI Cmtys., Inc.*, 348 F.Supp.2d 1322, 1326 (S.D.Fla.2004). The relevant portion of the Sarbanes–Oxley Act states,

> **(b) Enforcement action.—**
>
> **(1) In general.** A person who alleges discharge or other discrimination by any person in violation of subsection (a) may seek relief under subsection (c), by—
>
> **(A)** filing a complaint with the Secretary of Labor; or
>
> **(B)** if the Secretary has not issued a decision within 180 days of the filing of the complaint and there is no showing that such delay is due to the bad faith of the claimant, bringing an action at law or equity for de novo review in the appropriate district court of the United States, which shall have jurisdiction over such an action without regard to the amount in controversy.
>
> **(2) Procedure.—**
>
> **(A) In general.—**An action under paragraph (1)(A) shall be governed under the rules and procedures set forth in section 42121(b) of title 49, United States Code.
>
> **(B) Exception.—**Notification made under section 42121(b)(1) of title 49, United States Code, shall be made to the person named in the complaint and to the employer.
>
> **(c) Burdens of proof.—**An action brought under paragraph (1)(B) shall be governed by the legal burdens of proof set forth in section 42121(b) of title 49, United States Code.
>
> **(D) Statute of limitations.—**An action under paragraph (1) shall be commenced not later than 90 days after the date on which the violation occurs.

18 U.S.C. § 1514A. Pursuant to 49 U.S.C. § 42121(b), a plaintiff has ninety days to file a complaint with the Secretary of Labor. Within sixty days of the filing of the administrative complaint, the statute provides that OSHA is to issue written findings regarding whether there is reasonable cause to believe the defendant has discriminated against the employee in violation of the Act. *See* 49 U.S.C. § 42121(b)(2)(A); *see also* 29 C.F.R. § 1980.105(a). "If the Assistant Secretary concludes that a violation has not occurred, the Assistant Secretary will notify the parties of that finding." 29 C.F.R. § 1980.15(a)(2). The Assistant Secretary's findings "will be effective 30 days after receipt ..., unless an objection and a request for a hearing has been filed as provided at § 1980.106." *Id.* § 1980.15(c). "If no timely objection is filed with respect to either the findings or the preliminary order, the findings or preliminary order, as the case may be, shall

become the final decision of the Secretary, not subject to judicial review." 29 C.F.R. § 1980.106(b)(2).

An ALJ conducts the hearing, and the "decision of the administrative law judge will contain appropriate findings, conclusions, and an order pertaining to the remedies provided in paragraph (b) of this section, as appropriate." 29 C.F.R. § 1980.109(a). "Any party desiring to seek review, including judicial review, of a decision of the administrative law judge . . . must file a written petition for review with the Administrative Review Board ("the Board"), which has been delegated the authority to act for the Secretary and issue final decisions under this part." 29 C.F.R. § 1980.110(a). If a party does not file a timely petition for review with the Board, the ALJ's decision becomes the final order of the Secretary. *Id.* If, however, a party files a timely petition for review with the Board, "the decision of the administrative law judge will become the final order of the Secretary unless the Board, within 30 days of the filing of the petition, issues an order notifying the parties that the case has been accepted for review." *Id.* § 1980.110(b). The regulations further state,

> Within 60 days after the issuance of a final order by the Board (Secretary) under § 1980.110, any person adversely affected or aggrieved by the order may file a petition for review of the order in the United States Court of Appeals for the circuit in which the violation allegedly occurred or in the circuit in which the complainant resided on the date of the violation. A final order of the Board is not subject to judicial review in any criminal or other civil proceeding.

29 C.F.R. § 1980.112(a). The statute's wording is similar:

> Any person adversely affected or aggrieved by an order issued under paragraph (3) may obtain review of the order in the United States Court of Appeals for the circuit in which the violation, with respect to which the order was issued, allegedly occurred or the circuit in which the complainant resided on the date of such violation. The petition for review must be filed not later than 60 days after the date of the issuance of the final order of the Secretary of Labor.

49 U.S.C. § 42121(b)(4)(A).

Defendants argue that because Plaintiff timely sought review with the ARB, and the ARB did not issue an order, within thirty days of the filing of the petition, notifying the parties that it accepted the case for review, the ALJ's decision became the final decision of the Secretary. (*See* Mot. to Dismiss at 14.) Plaintiff filed his complaint with the Department of Labor on July 7, 2006, and he filed a petition for review with the ARB on December 20, 2006. (*See* Resp. in Opp'n at 7; *see also* Resp. in Opp'n Ex. C.) Plaintiff filed a Notice of Intent to File a Complaint in the Federal District Court on January 3, 2007, but he did not actually file suit until January 26, 2007. (*See* Resp. in Opp'n Ex. E.) As noted above, "the decision of the administrative law judge will become the final order of the Secretary unless the Board, within 30 days of the filing of the petition, issues an order notifying the parties that the case has been accepted for review." 29 C.F.R. § 1980.110(b). There is no evidence the ARB issued a notice that the case had been accepted for review, so the ALJ's decision became the final decision of the Secretary on January 19, 2007, thirty days after Plaintiff filed the petition for review with the ARB.[2] *Id.*

---

**2.** Plaintiff asserts there was no final decision until February 8, 2007. (*See* Resp. in Opp'n at 7.) According to Plaintiff, the ARB issued an "Order to Show Cause" on January 12,

Plaintiff thus filed his Notice of Intent to File a Complaint in the Federal District Court before the Secretary issued a final decision, but he actually filed his Complaint seven days after the Secretary issued a final decision. Furthermore, more than 180 days lapsed between the date Plaintiff filed his original complaint with the Department of Labor (July 7, 2006), and the date the Secretary's decision became final on January 19, 2007.

The most similar case the court's research has found is *Hanna v. WCI Communities, Inc.*, 348 F.Supp.2d 1322 (S.D.Fla.2004). In *Hanna*, the plaintiff filed an administrative enforcement action with the Department of Labor on December 12, 2003. *Hanna*, 348 F.Supp.2d at 1324. On June 15, 2004, "after not receiving any type of decision from the DOL within 180 days from the date he filed his administrative complaint, Mr. Hanna advised the DOL of his intent to file a federal lawsuit in the district court in fifteen days." *Id.* Before those fifteen days passed, the DOL issued its preliminary findings, indicating "there was no reasonable cause to believe that WCI was guilty of violating the Sarbanes–Oxley Act." *Id.* Then, on June 30, 2004, the plaintiff filed suit in federal court. *Id.* The defendants filed a motion to dismiss, asserting dismissal was proper because the plaintiff did not appeal the DOL's June 28, 2004 preliminary findings to an administrative law judge. *Id.*

The defendants argued that even though the Secretary had not issued a final decision within 180 days of the filing of the administrative complaint, the plaintiff was nevertheless required to appeal OSHA's preliminary findings to an ALJ because the findings were issued before the plaintiff filed his complaint in federal court. *Id.* at 1327. The plaintiff argued the district court had jurisdiction over his whistleblower complaint because "the DOL failed to issue a final decision: 1) within 180 days of the filing of his administrative complaint; and 2) prior to the filing of his district court complaint." *Id.* The United States District Court for the Southern District of Florida agreed with the plaintiff and held that he was allowed to bring his cause of action in federal court. *Id.* at 1328. The court stated the "DOL's regulations address the possibility of lawsuits being filed in district court during the pendency of administrative proceedings." *Id.* (citing 29 C.F.R. § 1980.114). The court noted the DOL had commented,

> This provision authorizing a Federal court complaint is unique among the whistleblower statutes administered by the Secretary. This statutory structure creates the possibility that a complainant will have litigated a claim before the agency, will receive a decision from an administrative law judge, and will then file a complaint in Federal court while the case is still pending on review by the Board. The Act might even be interpreted to allow a complainant to bring an action in Federal court after receiv-

---

2007, recognizing that Plaintiff had filed his Notice of Intent in federal court and that 180 days had elapsed since the filing of the initial complaint. (Resp. in Opp'n at 7–8.) Plaintiff asserts that "[o]n this basis, the ARB gave the parties until January 30, 2007 to show cause as to why the Board should not dismiss the appeal." (Resp. in Opp'n at 8.) Plaintiff apparently determines there was no final decision until February 8, 2007 because the ARB

actually issued a document entitled "Final Decision and Order" on that date. The evidence of this decision consists of a Certificate of Service, stating that the ARB's Final Decision and Order was sent on February 8, 2007. (*See* Resp. in Opp'n Ex. F.) As discussed on pages 10 through 11, the differing dates are immaterial as the court does not base its decision on the jurisdictional question.

ing a final decision from the Board, if that decision was issued more than 180 days after the filing of the complaint. The Secretary believes that it would be a waste of the resources of the parties, the Department, and the courts for complainants to pursue duplicative litigation. Procedures for the Handling of Discrimination Complaints Under Section 806 of the Corporate and Criminal Fraud Accountability Act of 2002, Title VIII of the Sarbanes–Oxley Act of 2002, 68 Fed.Reg. 31860–01 (May 28, 2003). The court in *Hanna,* however, recognized that Mr. Hanna's situation was not the one contemplated by the DOL; he had not received a decision from an ALJ when he filed his complaint. *Hanna,* 348 F.Supp.2d at 1328. The court thus held "as a matter of law, that the plain language of 18 U.S.C. § 1514A(b)(1)(B) allows Mr. Hanna to bring his whistle-blower complaint in this court because the DOL had not issued a final decision within 180 days of the filing of the complaint." *Id.*

In the case *sub judice,* more than 180 days passed between the time Plaintiff filed his complaint with the DOL and the time the Secretary issued a final decision. In that sense, allowing Plaintiff to proceed with his case would be consistent with *Hanna.* However, unlike in *Hanna,* the facts in the case *sub judice* involve the exact situation contemplated by the DOL—Plaintiff received a decision from an ALJ and filed suit in federal court while his appeal before the ARB was pending. The court need not decide this complex issue, however, because the court can resolve the case on its merits. *See JDS Uniphase Corp. v. Jennings,* 473 F.Supp.2d 705, 711 & n. 5 (E.D.Va.2007) (assuming the plaintiff exhausted his administrative remedies before he brought suit pursuant to Sarbanes–Oxley because although exhaustion is jurisdictional, the court is permitted to resolve merits ques-

tions before resolving statutory jurisdictional questions).

**B. The Merits (Motion to Dismiss for Failure to State a Claim)**

■ Title VIII of Sarbanes–Oxley, codified at 18 U.S.C. § 1514A, "is the provision that provides 'whistleblower' protection to employees of publicly traded companies." *Livingston v. Wyeth, Inc.,* No. 1:03CV00919, 2006 WL 2129794, at *7 (M.D.N.C. July 28, 2006). Pursuant to this section, "an employer may not discriminate against any employee in the terms and conditions of employment because of any lawful act done by the employee to provide information to the employer, a federal agency or Congress concerning violations of 18 U.S.C. §§ 1341 (mail fraud), 1343 (wire fraud), 1344 (bank fraud), or 1348 (securities fraud), or any other federal law relating to fraud against shareholders." *Id.* (citing 18 U.S.C. § 1514A(a)(1)).

■ To establish a *prima facie* case for a Sarbanes–Oxley whistleblower claim, Plaintiff employee must allege (1) he engaged in a protected activity as defined by the Act; (2) the employer was aware of the protected activity; (3) the employee suffered an adverse employment action; and (4) circumstances are sufficient to raise an inference that the protected activity was likely a contributing factor in the unfavorable action. *Id.* (citing *Collins v. Beazer Homes USA, Inc.,* 334 F.Supp.2d 1365 (N.D.Ga.2004)); *see also* 29 C.F.R. § 1980.104.

Defendants argue Plaintiff's claim fails to state a claim upon which relief can be granted because (1) Plaintiff's Complaint does not allege an adverse employment action and (2) Plaintiff's Complaint does not allege activity protected by Sarbanes–Oxley. (Mot. to Dismiss at 8.) Instead of

countering Defendants' arguments, Plaintiff states,

> The Plaintiff has submitted a detailed factual complaint, wherein he pled all of the elements of a prima facie case under Sarbanes–Oxley, and incorporates those facts by reference herein.
>
> Defendants raise issues with regard to the first and third elements listed above[;] however, a motion to dismiss is not the correct forum to raise issues of fact that require further discovery and a full hearing on the record to resolve.

(Resp. in Opp'n at 11.)

Plaintiff's Complaint alleges "Defendants took an adverse employment action against the Complainant in the form of threats, harassment, discrimination, and constructive discharge on April 11, 2006." (Compl.¶ 57.) According to Plaintiff, "[t]he threats, harassment, discrimination, and constructive discharge ... took place within one day of reporting possible violations of fraud statutes, rules and regulations...." (Compl.¶ 58.) It is undisputed that Plaintiff was not fired; in his Complaint, he alleges he was constructively discharged "when, believing he was going to be fired for reporting potential fraud, Mozingo walked past Hausgen, and handed his resignation to Quintana." (Compl.¶ 43.)

▪ "[I]n order to demonstrate constructive discharge, a plaintiff must allege and prove two elements: (1) deliberateness of the employer's actions and (2) intolerability of the working conditions." *Martin v. Cavalier Hotel Corp.*, 48 F.3d 1343, 1354 (4th Cir.1995) (internal quotation marks omitted). With respect to an employer's deliberateness, the Fourth Circuit requires the plaintiff prove that "the actions complained of were intended by the employer as an effort to force the employee to quit." *Id.* (citing *Paroline v. Unisys Corp.*, 879 F.2d 100, 114 (4th Cir.

1989) (Wilkinson, J., dissenting), vacated in part, 900 F.2d 27 (1990) (*en banc*) (adopting panel dissenting opinion)). Evidence of this intent can be proven by inference, and it may be shown by evidence that the employee's resignation was the reasonably foreseeable consequence of the employer's conduct. *Id.* at 1354, 1356. The intolerability of working conditions "is assessed by the objective standard of whether a 'reasonable person' in the employee's position would have felt compelled to resign." *Bristow v. Daily Press, Inc.*, 770 F.2d 1251, 1255 (4th Cir.1985). "[T]he law does not permit an employee's subjective perceptions to govern a claim of constructive discharge.... An employee is protected from a calculated effort to pressure him into resignation through the imposition of unreasonably harsh conditions, in excess of those faced by his co-workers. He is not, however, guaranteed a working environment free of stress." *Id.*

In *English v. Powell*, 592 F.2d 727 (4th Cir.1979), the plaintiffs alleged their constitutional rights were violated by the New Hanover County Alcoholic Beverage Control Board (the "Board"). *English*, 592 F.2d at 729. The Board had been reorganized, and plaintiff E.A. Shands, formerly a liquor store manager, filled a personnel management position that had been created in the reorganization. *Id.* Several months later, despite Shands' protests, defendant Powell became Shands' supervisor, and after Powell was appointed, Shands agreed not to voice any further complaints to Board members but to Powell himself in the chain of command. *Id.* Powell then told Shands that the personnel director position was being abolished but that Shands "would be kept on at the administrative level in an advisory capacity." *Id.* at 730.

When Shands told his wife about the meeting with Powell, Mrs. Shands made

some phone calls to Board members. *Id.* Although Shands was unable to prevent his wife from making the phone calls, he took the phone away from her several times. *Id.* The last phone call Mrs. Shands made was to Pender Durham, who was a Board member. *Id.* When Shands took the phone, Durham told Shands that "as a result of the calls made by Mrs. Shands to members of the Board, Powell would fire Shands the next morning." *Id.* When Shands met with Powell the next morning, he anticipated that he was about to be fired and requested to be reassigned to his former position as a liquor store manager; when he learned no such positions were available, he asked for a position as a liquor store clerk. *Id.* Powell "responded that he would 'think about it' and decide within three days whether Shands would be fired or reassigned." *Id.* Powell ultimately gave Shands a position as a store clerk; Shands appealed to the Board for reinstatement to his former position, and when the request was denied, he filed suit. *Id.*

The district court held, *inter alia*, "that Shands had voluntarily requested his demotion to clerk and had not been constructively discharged." *Id.* at 731. The Fourth Circuit stated that it could not "say with assurance, on motion for summary judgment, that Shands' request for demotion was voluntary." *Id.* In a footnote, the court stated that it was "reluctant to accept as dispositive the district court's conclusion that Shands was not constructively discharged." *Id.* at 731 n. 4. However, the court stated,

> Shands' claim that his job was made intolerable appears to rest upon the single statement of Pender Durham on October 9 that Powell would fire Shands the next morning. This is simply not the type of systemic harassment which would support a finding of constructive discharge.

*Id.*

■ Taking all of Plaintiff's allegations as true, he believed he was about to be fired. He resigned because he was afraid that if he was fired, he would have great difficulty obtaining another job in his current field. (*See* Compl. ¶¶ 39–44.) While his fear that he was going to be fired may have been reasonable, the fear of being fired does not amount to a constructive discharge. *See Alba v. Merrill Lynch & Co.*, 198 Fed.Appx. 288, 294–95 (4th Cir. 2006) (The plaintiff's working conditions were "difficult and stressful" but could not "reasonably be described as intolerable;" the plaintiff asserted his supervisors "tried to make his working conditions intolerable by forcing his son to resign ... at the same time [Merrill Lynch] was trying to force him out, by threatening him with the loss of ... [certain] benefits if he refused to retire, by telling some of his colleagues that his employment would be terminated long before he ultimately left, and by disconnecting his access to [the] computer system." The court cited *Honor v. Booz–Allen & Hamilton, Inc.*, 383 F.3d 180, 183–87 (4th Cir.2004), for the proposition that "plaintiff's job conditions were not intolerable even though he was told that he would be losing his job and was subjected to racial hostility from a coworker."); *Young v. Shore Health Sys., Inc.*, 305 F.Supp.2d 551, 560 n. * (D.Md.2003) (finding no constructive discharge when the plaintiff's theory was "that if she remained on the job she would be fired, and rather than waiting to learn the results of the review of her work and then, if necessary, resisting any effort to terminate her employment, and in order to avoid having to admit to future prospective employers that she had been terminated if she were unsuccessful, she resigned"). Moreover, all of the circumstances giving rise to Plain-

tiff's allegation of constructive discharge arose on April 11, 2006, and Plaintiff resigned that same day. (*See* Compl. ¶¶ 35–43.) Plaintiff received phone messages in the morning alleging his actions were inappropriate, and sometime that day, Plaintiff resigned. The court finds these circumstances do not, as a matter of law, rise to the level of intolerable working conditions required in order to show constructive discharge. *Cf. Heiko v. Colombo Savings Bank, F.S.B.*, 434 F.3d 249, 263 (4th Cir. 2006) (noting that "the denial of a single promotional opportunity is insufficient to create an intolerable working environment" (citation omitted)); *Nanas v. Schoolhouse Servs. & Staffing, Inc.*, No. 04–71660, 2006 WL 1234923, at *2 (E.D.Mich. May 8, 2006) ("From Plaintiff's allegations, it seems she believed her working conditions would *become* intolerable, but in the two days she remained employed after sharing her concerns, the Court cannot find that her working conditions *were* so intolerable that she was forced to resign."); *Laprise v. Arrow Intern.*, 178 F.Supp.2d 597, 609 (M.D.N.C. 2001) ("Upon the court's exhaustive review of the deposition testimony, it appears Plaintiff also alleges that her coworkers engaged in acts of sabotage and intimidation. Plaintiff's allegations of sabotage and intimidation constitute nothing more than typical workplace conflicts."). Accordingly, the court grants Defendants' Motion to Dismiss because Plaintiff failed to allege an adverse employment action.[3]

## ·*CONCLUSION*

It is therefore **ORDERED**, for the foregoing reasons, that Defendants' Motion to Dismiss is **GRANTED.**

**AND IT IS SO ORDERED.**

---

**3.** Defendants also argue this court should grant their Motion to Dismiss because Plaintiff failed to allege activity protected by Sarbanes–Oxley. "Reporting to one's superiors activities an employee reasonably believes constitute mail fraud, wire fraud, bank fraud, securities fraud, or violation of the securities laws or S.E.C. rules is protected activity under the Sarbanes–Oxley Act." *JDS Uniphase Corp. v. Jennings*, 473 F.Supp.2d 697, 700 n. 4 (E.D.Va.2007). The court in *Jennings* noted the authority concerning the scope of protected activity under Sarbanes–Oxley is sparse. *Id.; see also Collins v. Beazer Homes, Inc.*, 334 F.Supp.2d 1365, 1376 (N.D.Ga.2004) ("[A] plaintiff is not required to show an actual violation of the law, but only that she 'reasonably believed' that there was a violation of one of the enumerated laws or regulations."); *Brady v. Calyon Sec. (USA)*, 406 F.Supp.2d 307, 317 (S.D.N.Y.2005) (noting the whistleblower protection of Sarbanes–Oxley does not extend to privately traded companies); *Fraser v. Fiduciary Trust Co., Int'l*, 417 F.Supp.2d 310, 322 (S.D.N.Y.2006) ("While a plaintiff need not show an actual violation of law, or cite a code section he believes was violated, general inquiries do not constitute protected activity."). Sarbanes–Oxley provides whistleblower protection for employees who "provide information, cause information to be provided, or otherwise assist in an investigation regarding any conduct which the employee reasonably believes constitutes a violation of section 1341, 1343, 1344, or 1348, any rule or regulation of the Securities and Exchange Commission, or any provision of Federal law relating to fraud against shareholders ..." 18 U.S.C. § 1514A(a)(1). Some courts have held that whistleblower protection is triggered only when an employee voices a concern that would have an impact on shareholders. *See, e.g., Bishop v. PCS Admin. (USA), Inc.*, No. 05 C 5683, 2006 WL 1460032, at *9 (N.D.Ill. May 23, 2006) ("All the statutes and regulations referenced in § 1514A(a)(1) are ones setting forth fraud. The phrase 'relating to fraud against shareholders' in this provision must be read as modifying each item in the series, including 'rule or regulation of the Securities and Exchange Commission.'"). The court need not reach this issue, however, as it finds Plaintiff has not alleged an adverse employment action.